Siobhan HOLLAND, et al., Appellants,

v.

DISTRICT OF COLUMBIA and Franklin L. Smith, Superintendent, District of Columbia Public Schools, Appellees.

No. 95–7016.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 17, 1995.

Decided Dec. 12, 1995.

**418**

Holly C. Cooper, argued the cause, for appellants, with whom Matthew B. Bogin, Washington, DC, was on the briefs.

Donna M. Murasky, Assistant Corporation Counsel, argued the cause, for appellees, with whom Charles F. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief. Garland Pinkston, Jr., Principal Deputy Corporation Counsel, Washington, DC, entered an appearance.

Before WALD, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

The parents of Siobhan Holland, an emotionally troubled teenage girl, allege that the District of Columbia Public Schools ("DCPS") violated procedural and substantive requirements of the Individuals With Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (1994) ("IDEA" or "Act"), and that those violations entitle the parents to reimbursement for the costs they incurred placing Siobhan in an appropriate private residential educational setting. Despite finding that the residential school constituted an appropriate placement for Siobhan, the hearing officer for the case ruled that the parents

were not entitled to reimbursement for their child's education because they had unlawfully withheld their consent for DCPS to evaluate her as required by the IDEA. The Hollands appealed to the district court, which granted DCPS' Motion to Dismiss the Complaint or in the Alternative for Summary Judgment. The district court held that "DCPS must evaluate Siobhan Holland before a placement determination is made under the IDEA," and ruled in favor of the educational agency. *Holland v. District of Columbia,* No. 93–cv–1370, Memorandum Opinion, at 6–7 (D.D.C. Sept. 8, 1994) ("Mem.Op.").

We find that the IDEA guarantees Siobhan's parents the right to have DCPS respond to their reasonable inquiries regarding the evaluation and placement process, and therefore remand to the district court to determine whether DCPS ever responded to the reasonable inquiry which the record shows the Hollands made. If, in fact, DCPS provided the parents with specific information regarding the tests to which it proposed to subject Siobhan, then the Hollands cannot prevail on their claim. If, on the other hand, DCPS refused to provide the Hollands with an answer to which the IDEA and implementing regulations entitled them, the Hollands must prevail.

## I. BACKGROUND

Siobhan Holland was a troubled thirteen-year-old girl enrolled in private school when her quest for publicly funded special education began in early 1992. At that time, Siobhan's parents requested that DCPS evaluate their daughter to determine her eligibility for publicly funded special education and, if appropriate, propose a placement for her in accordance with the mandates of the IDEA.

■ The IDEA provides federal money to assist state and local educational agencies with the education of children with disabilities. *See* 20 U.S.C. § 1400(b)(9). To qualify for the federal assistance, a participating state must guarantee all children with disabilities the right to a free appropriate public education ("FAPE"), *id.* § 1412, in accordance with an individualized education program ("IEP") developed by people familiar with the child's needs, *see id.* § 1414(a)(5).

The statute guarantees an "appropriate" education for every child with a disability, but does not necessarily guarantee the child the best available education. *See Board of Educ. v. Rowley,* 458 U.S. 176, 200, 102 S.Ct. 3034, 3047, 73 L.Ed.2d 690 (1982).

In 1991, when Siobhan was thirteen years old, her parents admitted her to the Psychiatric Institute of Washington ("PIW") because of troublesome behavior. Siobhan had run away from home several times for short periods, and had carved obscenities into her arm with a razor blade. After two weeks in the residential program at PIW, Siobhan was discharged and returned home. Shortly thereafter, in February 1992, Siobhan's parents requested that DCPS evaluate her to determine her eligibility under the IDEA for a free appropriate public education, and, if appropriate, propose a placement for her.

■ Under *Mills v. Board of Education of the District of Columbia,* 348 F.Supp. 866, 878 (D.D.C.1972), DCPS had twenty days from the date of the request to complete its evaluation and diagnosis, and then up to thirty more days to propose a placement for Siobhan. Upon DCPS' failure to evaluate the child within this time frame, the Hollands requested a due process hearing before an independent hearing officer, as was their right under the IDEA. 20 U.S.C. § 1415(b)(2).

On May 14, 1992, the Hollands got their due process hearing. The hearing officer ruled that DCPS's delay had denied Siobhan her due process rights and ordered the agency to evaluate her and, if appropriate, propose a placement for her by June 12, 1992. On May 17, the Hollands, through their attorney, provided DCPS with a 1991 independent psychiatric evaluation of Siobhan, along with a letter and discharge summary from her stay at PIW.

On May 19, the parties began the exchange of letters that gives rise to the factual question on which this case turns. In an effort to comply with the hearing officer's order, DCPS wrote to Matthew Bogin, the Hollands' attorney, in order to schedule a clinical psychological evaluation and social history for either May 20 or May 22. The next day, Bogin and a representative from DCPS spoke on the telephone and agreed that DCPS would assess Siobhan on May 22.

On May 21, the day before the proposed assessment, DCPS sent Bogin a letter confirming the previous day's telephone call and requesting a copy of the PIW discharge summary and recommendations, as well as progress reports from Siobhan's therapist. Bogin responded the same day with a letter stating that he had already supplied DCPS with the requested material, and that "[g]iven these documents I see no need for further testing of Siobhan. Even if there may be need for further testing, I cannot see why that testing cannot be done at [Siobhan's] current school." Letter from Matthew Bogin to Ryland Randolph, DCPS Case Manager (May 21, 1992). The letter also requested that DCPS comply with federal regulations regarding parental rights to adequate notice of proposed agency action.

On May 22, DCPS wrote back with a list of three tests it proposed to conduct in order to assess Siobhan. The letter listed: a "clinical interview," to be conducted on May 27 at Holy Trinity School; a "social history," to take place at Francis Junior High School the same day; and a "classroom observation/review of educational records/teacher interview," to be conducted at Holy Trinity on May 28. The letter ended, "If there are any questions regarding this matter, please don't hesitate to contact this office." Letter from Randolph to Bogin (May 22, 1992).

In fact, the Hollands did have questions about the proposed assessment, and took DCPS up on its invitation to "contact this office." On May 26, Bogin complained in a letter to DCPS that the May 22 correspondence had not satisfied federal notice requirements. Specifically, Bogin alleged that the parents had a right to know "which evaluations are to be conducted," and that they had not been told what a "clinical interview" consisted of. "Further," the letter stated, "if this procedure includes tests or other procedures, we are entitled to know what they are prior to giving consent. Therefore, we cannot consent to this evaluation without further clarification." Letter from Bogin to Randolph (May 26, 1992). Bogin ended his letter

with a request for clarifications on the issues expressed therein.

At this point, the record becomes unclear as to exactly what communication took place between the parties. Each side claims that lack of cooperation from the other party blocked all efforts to resolve the issue. What *is* clear is that the Hollands moved for a new due process hearing on July 14, 1992, "to address the failure of DCPS to provide an appropriate special education and Due Process of Law." [1] Letter from Bogin to Robert Burch, Director of the DCPS Student Hearing Office (July 14, 1992). The record also shows that the second due process hearing did not take place until March 3, 1993. Thus, more than a year after the Hollands' initial request for assessment, and nine months after the deadline established at the first due process hearing had passed, Siobhan still had not been evaluated or placed in a public special education program.

During the nine-month stalemate when Siobhan, for whatever reason, was not evaluated by DCPS,[2] the Hollands had their doctor conduct yet another independent psychiatric evaluation of Siobhan. The assessment was done in June, and in July, Bogin forwarded the doctor's recommendations to DCPS. At some point during that summer of 1992, the Hollands enrolled Siobhan, at their own expense, in a private residential special educational program consistent with Siobhan's independent psychological assessments and recommendations.

On March 3, 1993, at the second due process hearing, the Hollands argued that DCPS should be required to reimburse them for the expense of Siobhan's private education.[3] The hearing officer determined that the private placement was, in fact, providing an appropriate education for Siobhan, but nevertheless held that the Hollands should not be reimbursed because they had wrongfully withheld their consent to a DCPS-conducted assessment. Hearing Officer's Determination in the Matter of Siobhan Holland 4 (April 23, 1993) ("Determination"). Because of the Hollands' refusal to consent, the hearing officer concluded, DCPS was unable to complete its evaluation and assessment by the June 12, 1992 deadline. "DCPS was indeed blocked by being enshrouded in an increasingly complicated procedural web," the hearing officer wrote. *Id.* at 5.

During the hearing, DCPS' witnesses stated that they wanted "hands on" experience with Siobhan, and the hearing officer concluded that the right to evaluate Siobhan itself was "squarely within the purview of DCPS since they [*sic*] must include persons who are knowledgeable about the student and knowledgeable about the meaning of the evaluative data in the group that makes

---

**1.** The record is unclear as to whether DCPS or the Hollands actually made the initial request for the second due process hearing. The record contains an internal memorandum from Siobhan's DCPS case manager to the Student Hearing Office, requesting that the Hearing Office schedule a hearing on an expedited basis, "as a result of the obstacles created by opposing counsel." Letter from Enechi Modu to Robert Burch (May 29, 1992). It is unclear to us whether this letter ever gave rise to a formal request for a due process hearing. In the second due process hearing determination, the hearing officer reported that that hearing was conducted in response to the *parents'* request of July 14. Hearing Officer's Determination at 2 (March 3, 1993).

**2.** The record shows that during this time, the Hollands repeatedly requested that a date be set as soon as possible for the due process hearing. The record also shows, however, that internal DCPS memoranda were sent from the DCPS staff attorney to the Student Hearing Office suggesting numerous available dates to offer the Hollands for the hearing. There is no record of whether or not the available dates were ever communicated to the Hollands or their attorney for their approval.

**3.** The Supreme Court has held that the IDEA empowers courts, in certain circumstances, to order school authorities to reimburse parents for unilaterally placing their children in private schools. *Florence County Sch. Dist. Four v. Carter*, —— U.S. ——, ——, 114 S.Ct. 361, 364, 126 L.Ed.2d 284 (1993) (citing *School Comm. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985)). Applying these precedents, this court has ordered reimbursement where the public agency violated the Act and the parents made an appropriate placement. *E.g., McKenzie v. Smith*, 771 F.2d 1527, 1535–36 (D.C.Cir.1985); *see also Wirta v. District of Columbia*, 859 F.Supp. 1 (D.D.C.1994). In this case, the Hollands allege that DCPS' violations of the IDEA's procedural safeguards gave them the right to reimbursement for their unilateral placement of Siobhan in an appropriate private school.

placement decisions." The hearing officer continued: "This is a particularly touchy issue for DCPS. They perceive injustice in a system that penalizes them for refusing to rely solely upon outside reports and at the same time penalizes them for not having personal knowledge of the student." Determination at 4–5.

The parents requested a rehearing, which the hearing officer denied on June 11, 1993, and then appealed the decision to the District Court for the District of Columbia. The district court granted DCPS' Motion to Dismiss the Complaint or in the Alternative for Summary Judgment, concluding that "the Hollands have failed in their burden of persuading the Court that the Hearing Officer was wrong." Mem.Op. at 6.[4] The district court also found that "DCPS must evaluate Siobhan Holland before a placement determination is made under the IDEA." *Id.*

The Hollands argue on appeal that DCPS' repeated violations of the IDEA and its implementing regulations (the initial delay leading up to the first due process hearing; the failure to provide adequate notice of proposed procedures; and the ultimate failure to conduct any assessment or propose any placement for Siobhan) gave the parents the right to enroll Siobhan in a private school that met her specific educational needs and the right to reimbursement for the expense of that school. DCPS, on the other hand, argues that the agency has an absolute right to conduct its own evaluation rather than relying on the independent assessments supplied by the Hollands, and that it has been unable to conduct an evaluation because the Hollands have unlawfully refused their consent.

## II. DISCUSSION

### A. *The Statute*

The IDEA anticipates significant parental involvement in the education of a child with a disability. The Act establishes detailed procedural safeguards to protect "children with disabilities *and their parents.*" 20 U.S.C. § 1415(a) (emphasis added). These protections include the right to adequate notice of any agency action, as well as the "opportunity for the parents . . . to examine all relevant records with respect to the identification, evaluation, and educational placement of the child . . . and to obtain an independent educational evaluation of the child." *Id.* § 1415(b).

The Act requires the state or local educational agency to provide parents with "written prior notice . . . whenever such agency or unit—(i) proposes to initiate or change, or (ii) refuses to initiate or change, the identification, evaluation, or educational placement of the child or the provision of a [FAPE] to the child." *Id.* § 1415(b)(1)(C). If the parents do not receive the information to which they are entitled, or if they object to the proposed agency action or inaction, they also have the right to an impartial due process hearing conducted by an independent hearing officer, *id.* § 1415(b)(2), and the right to appeal the hearing officer's decision to the district court, where the court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court deems appropriate." *Id.* § 1415(e)(2).

### B. *The Regulations*

Federal regulations implementing the IDEA further clarify some of the statute's

---

**4.** The parties disagree as to whether the court granted the Rule 12(b)(6) motion to dismiss or the motion for summary judgment. Although the district court's language, particularly in the denial of the Hollands' motion to amend, suggests an intent to grant the motion to dismiss ("The plaintiffs, however, point to *no set of facts* which would warrant the relief requested. . . . [E]ven when plaintiffs' facts are accepted in a motion to dismiss . . ."), we will treat the court's action as a grant of summary judgment because we are directed to do so by the federal rules. Federal

Rule of Civil Procedure 12(b) requires that "[i]f, on a motion asserting [12(b)(6)] to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED.RULE CIV.P. 12(b). In this case, the court cited liberally in the opinion to the materials appended to the motion for summary judgment. *See* Mem.Op. at 1–4.

procedural requirements. For example, 34 C.F.R. § 300.503 elucidates the parents' right to obtain an independent educational assessment. If the parents disagree with an evaluation obtained by the agency, they can obtain an independent one at public expense. However, if a final decision shows that the agency's original action was appropriate, the parents' independent assessment will not be at public expense. *Id.* § 300.503(b). If the parents exercise this right to obtain an independent evaluation, the evaluation "[m]ust be considered by the public agency in any decision made with respect to the provision of FAPE to the child." *Id.* § 300.503(c).

The notice requirements are addressed in § 300.504 of the regulations, which specifies that the parents are entitled to adequate written notice, a reasonable time before the agency either "(1) Proposes to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child; or (2) Refuses to initiate or change the identification, evaluation, or educational placement of the child or the provision of FAPE to the child." *Id.* § 300.504(a).

The content of the notice, as discussed in § 300.505, must include a full description of the procedural safeguards available to parents, as well as a "description of the action proposed or refused by the agency, an explanation of why the agency proposes or refuses to take the action, and a description of any options the agency considered and the reasons why those options were rejected." *Id.* § 300.505(a)(2). The parents are also entitled to a "description of each evaluation procedure, test, record, or report the agency uses as a basis for the proposal or refusal" and a "description of any other factors that are relevant to the agency's proposal or refusal." *Id.* § 300.505(a)(3), (4).

A parent who objects to agency action can request a due process hearing, which the regulations specify must lead to a final decision within forty-five days of the hearing request. *Id.* § 300.512(a).

## C. The Decisions Below

The hearing officer's determination at the second due process hearing, which the district court effectively affirmed in its grant of defendant's Motion to Dismiss the Complaint or in the Alternative for Summary Judgment, held that the parents should not be reimbursed for their educational expenses because the parents had "wrongfully withheld" their consent to the DCPS evaluation. Determination at 4.[5]

Both the hearing officer and the district court concluded—we believe incorrectly— that DCPS had an absolute right to evaluate Siobhan itself, regardless of the independent evaluations. The hearing officer wrote that the agency "perceive[s] injustice in a system that penalizes them for refusing to rely solely upon outside reports and at the same time penalizes them for not having personal knowledge of the student." Determination at 5. Along the same lines, the district court held that the IDEA did not "*allow* the distribution of public funds based solely on the evaluations of persons hired by the beneficiaries of those funds." Mem.Op. at 5.

In fact, the IDEA does not insist that the agency conduct its own psychological tests on the child, as long as the agency ensures that *some person* who is knowledgeable about the evaluations of the child be present during all placement meetings. *See* 34 C.F.R. § 300.344(b)(2) ("[T]he public agency shall ensure ... that the representative of the

---

5. Significantly, the hearing officer also determined that "the parents, through counsel, refused consent *until the issues could be clarified.*" *Id.* at 5 (emphasis added). His determination expresses sympathy for DCPS, since the agency was "blocked by being enshrouded in an increasingly complicated procedural web." Determination at 5. Identifying a procedural web is not enough to vindicate DCPS' position, however; to the extent that the "web" was put in place by Congress in the IDEA, it is one the agency, however begrudgingly, must accept.

Without additional information, it cannot be assumed that the Hollands' request for clarification constituted an all-out refusal to consent to the evaluation. Particularly in the context of a statute with detailed procedural safeguards designed to ensure full parental information and participation, such an assumption is unwarranted. Thus, if the Hollands were entitled to, but did not receive, answers to the questions posed in the letter in which they deferred their consent *until they received clarification,* then their consent was not in fact unlawfully withheld.

public agency, the child's teacher, *or some other person* is present at the meeting, who is knowledgeable about the evaluation procedures used with the child and is familiar with the results of the evaluations." (emphasis added)). Similarly, the cases addressing the use of independent examinations have held that nothing in the statute or regulations requires the agency itself to *conduct* the evaluation. *See Hudson v. Wilson,* 828 F.2d 1059, 1065 (4th Cir.1987) (the statute "does not impl[y] that local schools must corroborate private results before using them"); *Wirta v. District of Columbia,* 859 F.Supp. 1, 4 (D.D.C.1994) (rejecting the hearing officer's finding that the appropriateness of a private placement could not be determined without a DCPS reevaluation of the plaintiff); *Carroll v. Capalbo,* 563 F.Supp. 1053, 1058 (D.R.I. 1983) ("Nowhere in the regulations is there a requirement that school personnel must themselves perform the evaluation.").

We conclude today that neither party in this case is entirely correct. We cannot hold, as DCPS urges us, that the public agency has an *absolute* right to conduct its own evaluation of a child with a disability, and that there is no set of circumstances under which the agency must rely on a reasonable independent assessment rather than submitting a child to excessive duplicative testing. We also do not accept the Hollands' position that DCPS had *no* right to interview a child who had already been independently assessed.

■ However, we need not reach the question of when DCPS may or may not conduct its own evaluation, because the Hollands assert that DCPS cut off communication without providing them with information to which the statute and regulations plainly entitle them. If DCPS violated the Hollands' right to adequate notice of testing procedures, the Hollands are entitled to relief. In the May 21 letter to DCPS, the Hollands asked what the proposed "clinical interview" consisted of, and, if it consisted of additional psychological tests, why DCPS believed the additional testing was necessary. Given the heavy emphasis in the statute on parental involvement in all aspects of a child's special education, as well as the Act's detailed guarantees of full notice to the parents of any proposed or refused action, we conclude that the Hollands were statutorily entitled to an answer to their question.

If DCPS shows on remand that it provided the Hollands with a reasonably informative answer to their request for clarification of what the "clinical interview" would consist of, the case will take on a different cast. If DCPS did in fact so respond, the Hollands had two legitimate courses of action; either they could consent to the assessment, in which case Siobhan could be evaluated and receive a placement somewhere, or they could specifically challenge the merits of the agency's explanation of the need for further testing. For example, if DCPS can demonstrate that it explained to the Hollands that although it accepted as valuable the independent evaluations, it nevertheless wanted to gather additional information to determine if the Lodge School was the *only* place acceptable for Siobhan, then the Hollands received the full notice to which they were entitled. At that point, they could have elected specifically to challenge DCPS' right to insist on the particular tests it proposed to conduct. But since the Hollands did not take this route, they were not entitled unilaterally to place the child and obtain reimbursement, and their claim should fail.

If, on the other hand, DCPS did *not* respond to the Hollands' inquiry, the Hollands cannot be penalized for their refusal to consent to the assessment, and they should prevail on their claim. DCPS cites our decision in *McKenzie v. Smith,* 771 F.2d 1527, 1531–32 (D.C.Cir.1985), to support the proposition we have rejected—that DCPS has an absolute duty to conduct its own evaluation of a student who has not previously participated in the public school system. *See* Brief for Appellees at 21. *McKenzie* does not, in fact, require that the parents wait for DCPS to conduct an evaluation. Rather, this court held in *McKenzie* that the school system must "become knowledgeable about [the child's] individual needs." 771 F.2d at 1532. We did *not* state that the agency must necessarily evaluate the child itself, but rather that the agency was obligated to familiarize itself with the child's particular needs before pro-

posing a change in his IEP that was inconsistent with the only evaluation that had been conducted. We clearly left open the option in *McKenzie* for DCPS to defer to the IEP developed by the private school the child attended. *Id.* at 1531–32.

The facts in *McKenzie* actually support our decision to remand this case to the district court. In *McKenzie,* the child's private school evaluated him and determined that he should be placed in a residential school. DCPS disagreed with the recommendation and requested more information. The parents submitted a psychological evaluation done by a private psychiatrist. When DCPS proposed a psychological evaluation, the parents consented to an interview, but refused to consent to duplicative psychological tests. *Id.* at 1530. After meeting with the child for one hour, DCPS recommended a nonresidential program. The parents again objected, and a hearing officer agreed that residential placement was necessary. *Id.*

This court determined that DCPS had violated both the procedural and the substantive prongs of the IDEA. *Id.* at 1531. Specifically, we held that the public agency *"may* permit the private school to conduct meetings to review and revise the child's IEP." *Id.* (emphasis added). However, the agency was also obligated to "insure that its placement decision was made by persons knowledgeable about the child … and to provide appropriate written notice to the [parents]." *Id.* at 1532 (internal quotation marks and citation omitted). Especially given the fact that the child had spent his educational life in private schools, it was "essential that DCPS adequately explain the basis for its placement decision." *Id.* Ultimately, the court determined that the plaintiff's placement—based on the independent assessment—was proper; that the agency's placement was improper; and that the parents were entitled to reimbursement. *Id.* at 1535–36.

A recent decision in our district court is also instructive in this regard. *See Wirta, supra,* 859 F.Supp. 1. The district court in *Wirta* rejected the position that a placement cannot be held proper until DCPS has conducted its own evaluation. *Id.* at 4. Finding procedural IDEA violations by DCPS in that

case, the court ordered the remedy the Hollands seek here—reimbursement for private school expenses incurred by the child's parents.

Although the district court misinterpreted the law in this one respect, the Hollands also advanced an incorrect version of the law. The Hollands appear to argue that unless the independent evaluations are insufficient for some reason, DCPS *must* forgo its own assessment and rely instead on the evaluations provided by the parents. Although we agree that under certain circumstances (not present here), an agency's proposal to re-conduct numerous properly-done intrusive examinations might not be justified, the Hollands' position that DCPS has no right to examine a child who has been independently assessed is drastically overstated.

As noted above, we need not decide today under what circumstances DCPS might not be permitted to conduct its own evaluation. The only issue we address here is whether the hearing officer and the district court were correct in finding that the Hollands unlawfully withheld their consent when they wrote to DCPS requesting clarification regarding the assessment process. Their letter requested information regarding several questions; first, they asked for a description of the procedures included in the proposed "clinical evaluation"; second, they requested information regarding the evaluator's qualifications; finally, the Hollands objected to the location of the "social history" and a last-minute time change by DCPS. The only objection we need address is the first; the hearing officer made a factual finding, which we find no reason to disturb, that "DCPS took other and further steps to supply requested information about the qualification of the evaluators to parents' counsel," Determination at 4, and the Hollands have not addressed the third complaint on appeal.

We do find, however, that the Hollands' first question—what procedures DCPS proposed to do during the "clinical evaluation"— is a reasonable inquiry which, in light of the IDEA's guarantee of adequate notice, deserved an answer. The Supreme Court in *Rowley* acknowledged that parental involvement in the special education process under

the IDEA was no congressional accident. "Congress sought to protect individual children by providing for parental involvement in the development of state plans and policies, and in the formulation of the child's [IEP]." 458 U.S. at 208, 102 S.Ct. at 3052 (citations omitted). The Senate Report, quoted in *Rowley*, states that "[by] emphasiz[ing] the process of parent and child involvement ... the Committee intends to clarify that such individualized planning conferences are a way to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child." *Id.* at 208–09, 102 S.Ct. at 3052 (citation omitted).

*Rowley* also states very clearly that the IDEA's procedural safeguards are an integral part of the Act:

> [W]e think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures *giving parents and guardians a large measure of participation at every stage of the administrative process,* as it did upon the measurement of the resulting IEP against a substantive standard.

*Id.* at 205–06, 102 S.Ct. at 3050 (emphasis added) (citation omitted).

In light of Congress' heavy emphasis on parental involvement and the regulations' various procedural guarantees—that parents receive full notice of any proposed or refused action; that parents receive a full description of each test to be conducted; and that independent assessments must be considered in any decision made with respect to the provision of an education to the child—we find that the Hollands were statutorily entitled to know what procedures were involved in the "clinical interview." If, by chance, the clinical assessment DCPS wished to conduct included strenuous psychological examinations to which Siobhan had already been subjected, once the Hollands had that information, they might then have been in a position to challenge the need for additional testing. Because the Hollands did not proceed on this ground, however, the district court on re-

mand need only determine whether the Hollands received a reasonably informative answer to their inquiry. If the district court finds that DCPS complied with the requirement that it provide the Hollands with the information they sought, the court's original ruling in favor of the agency should stand.

If, however, the court should determine that DCPS, believing the Hollands' request for additional information to be unreasonable, took the parents' inquiry as an excuse to suspend all further action with respect to Siobhan's evaluation and placement, the court's original decision must be vacated and a judgment entered for the Hollands to the extent that the court finds that the Lodge School is an appropriate placement, and that the costs of that placement are reasonable. *See Florence Cty. Sch. Dist. Four v. Carter,* — U.S. ——, ——, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993) (parents who place their children in private schools without the consent of local school officials are entitled to reimbursement only if a federal court finds that the public agency violated the IDEA, that the private school was an appropriate placement, and that cost of the private education was reasonable).

Thus, we remand to the district court for a determination of whether or not DCPS ever informed the Hollands of the contents of the proposed "clinical interview," and, on the basis of that determination, any further proceedings that are appropriate.

*Remanded.*