Andrew GOLDSTROM et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA
et al., Defendants.**

**No. 03–1039 (RMU).**

United States District Court,
District of Columbia.

May 14, 2004.

---

1. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Haylie Michelle Iseman & Michael J. Eig, Michael J. Eig & Associates, PC, Chevy Chase, MD, for Plaintiffs.

Melvin W. Bolden, Jr., Office of the Corporation Counsel, Washington, DC, for Defendants.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### REMANDING THE CASE TO THE HEARING OFFICER

### I. INTRODUCTION

In this case, plaintiffs Ingrid Goldstrom and her son Andrew bring suit under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, against the District of Columbia and its superintendent of schools (collectively, "the defendants") after a hearing officer denied them reimbursement for the cost of placing Andrew at the Parkmont School ("Parkmont"), a private school providing specialized instruction. Specifically, the plaintiffs allege that the defendants denied Andrew a free and appropriate public education ("FAPE"), failed to place and fund him at Parkmont, and erroneously denied the plaintiffs reimbursement for the costs of placing him at Parkmont. The plaintiffs now move for summary judgment. Because the hearing officer made no findings as to whether the defendants denied Andrew a FAPE, the court remands the case to the hearing officer for appropriate action.

### II. BACKGROUND [1]

Andrew Goldstrom is a 17–year–old student whom Montgomery County, Maryland school officials determined to be eligible for special-education services under IDEA. Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 3; Defs.' Statement of Undisputed Material Facts ("Defs.' Statement") ¶ 1.

1. As part of their motion, the plaintiffs include a "Factual Background" section that purports to comply with the requirements under the Local Civil Rules for a statement of undisputed material facts. Pls.' Mot. at 3–11 (citing LCvR 7.1(h), now LCvR 7(h)). This background section, however, does not qualify as such a statement. Under Rules 7(h) and 56.1, a party moving for summary judgment must attach "a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h) & 56.1. The plaintiffs' background section does not list undisputed facts, but instead sets forth a narrative that includes disputed facts and relies almost exclusively on the complaint and a declaration by Ms. Goldstrom, with just three citations to the administrative record. Pls.' Mot. at 3–11. It therefore does not assist the court in "isolat[ing] the facts that the parties assert are material, distinguish[ing] disputed from undisputed facts, and identif[ying] the pertinent parts of the record." *Burke v. Gould*, 286 F.3d 513, 517 (D.C.Cir.2002). The court also notes that, with the exception of their descriptions of the standard of review, the parties provide virtually no case law supporting their respective positions. *See generally* Pls.' Mot.; Defs.' Opp'n. Given the court's action today, however, the court need not strike the chain of briefing.

In September 2002, at the suggestion of Andrew's psychologist, Ms. Goldstrom enrolled Andrew at Parkmont, where he remains today. Pls.' Mot. at 4–5; Defs.' Statement ¶ 2.

In late November 2002, the plaintiffs—who formerly resided in the District of Columbia—moved from Maryland back to the District of Columbia. Pls.' Mot. at 5. In early December 2002, Ms. Goldstrom went to Wilson Senior High School ("Wilson S.H.S."), the neighborhood school, to register Andrew and meet with the school's special-education coordinator. Id.; Defs.' Statement ¶ 3. Although the parties agree that Ms. Goldstrom and the coordinator discussed Andrew's registration, they diverge on the details of the meeting. Id. According to Ms. Goldstrom, she signed various forms, gave the coordinator a packet of documents (including Andrew's evaluations, progress reports, and individualized education programs ("IEPs")), informed him that Andrew was attending Parkmont, and indicated that she did not want to bring Andrew to Wilson until school officials determined that Wilson was an appropriate placement for Andrew. Pls.' Mot. at 5, 19. Ms. Goldstrom also states that the coordinator "never asked her to bring Andrew to Wilson S.H.S. to complete a class schedule, or for any other reason," and that she "never heard from Wilson S.H.S. staff or [the coordinator] again," although she "would have been ready and willing to cooperate with the defendants in any evaluation or observation." Id. at 5, 7. According to the defendants, the coordinator advised Ms. Goldstrom that she could register Andrew once she established proof of residency, that she should bring Andrew to Wilson to complete a schedule, and that he needed copies of Andrew's evaluations and other relevant documents. Defs.' Statement ¶¶ 3–4.

In March 2003, Ms. Goldstrom requested a due-process hearing before a hearing officer, alleging that the defendants had failed to provide Andrew with special-education services and seeking reimbursement for Andrew's placement at Parkmont. Id. ¶¶ 7–8; Pls.' Mot. at 6. At the hearing, Ms. Goldstrom, the coordinator, and Andrew's psychologist testified. A.R. at 1, 101–02, 118–41. In May 2003, the hearing officer issued a determination denying the plaintiffs' request for relief. Id. at 1–4. Focusing solely on the issue of reimbursement, the hearing officer stated that

> the parent placed her son in a private placement at the beginning of the school year, and than [sic] waited until December 9th to go to the student's home school to register him and waited until March 31st 2003 to file a due process hearing request . . . The parent also testified that she never took her son to the Wilson S.H.S. and did not want him to go there because there would be students from his old elementary schools who might tease him.

Id. at 4. The hearing officer went on to conclude that

> the parent . . . was not interested in any special education program that Wilson S.H.S. could offer her son. The mother did not provide a written referral and parental consent for evaluations . . ., make [her son] available for any evaluations at Wilson S.H.S. or give Wilson an opportunity to develop an appropriate program. The mother did not give written notice to Wilson S.H.S. when she moved back to the District that she was going to place her son in a private placement. She waited until almost the end of the school year to file a hearing request seeking reimbursement.

Id. Accordingly, the hearing officer determined that "equity factors compel [the de-

nial of] reimbursement." *Id.* The plaintiffs then filed suit in this court.

## III. ANALYSIS

### A. Legal Standard for Private–Placement Reimbursement Under IDEA

Congress enacted IDEA "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *Calloway v. District of Columbia,* 216 F.3d 1, 3 (D.C.Cir.2000). Before providing special-education services, a school district must conduct an individual evaluation to determine a child's eligibility under IDEA. *A.B. ex rel. D.B. v. Lawson,* 354 F.3d 315, 319 (4th Cir.2004). By law, the District of Columbia Public Schools ("DCPS") must conduct such an evaluation within 120 days of the date of the child's referral for evaluation. Pub.L. No. 105–277, Div. A, Sec. 101(c), Sec. 145 (1998). If the child qualifies as disabled and thus eligible for services, the school district must develop an IEP to meet the special educational needs of the child. *Lawson,* 354 F.3d at 319; *Calloway,* 216 F.3d at 3. A parent who objects to a child's identification, evaluation, or educational placement may request a due-process hearing before a hearing officer, and, if dissatisfied with the hearing officer's determination, may bring suit in state or federal court. *Calloway,* 216 F.3d at 3.

■ Under IDEA, parents who unilaterally place their child at a private school without the consent of school officials do so at their own financial risk. *Florence County Sch. Dist. 4 v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (citing *Sch. Comm. v. Dep't of Educ.,* 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)); *Schoenbach v. District of Columbia,* 2004 WL 595014, at *4 (D.D.C. Mar.25, 2004). Such parents may be reimbursed only if (1) the school officials' public placement violated IDEA and (2) the private-school placement was proper under IDEA. *Florence County,* 510 U.S. at 15, 114 S.Ct. 361; *Holland v. District of Columbia,* 71 F.3d 417, 420 n. 3 (D.C.Cir. 1995) (noting that this circuit has ordered reimbursement "where the public agency violated [IDEA] and the parents made an appropriate placement"); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii) (stating that reimbursement may be appropriate if "the agency had not made a free appropriate public education available to the child in a timely manner prior to [the private-school] enrollment"). In analyzing the first factor of whether the public placement violates IDEA, the court undertakes a two-step sub-inquiry, asking (a) whether the school officials complied with the procedures set forth in IDEA, and (b) whether the IEP developed through IDEA procedures was reasonably calculated to enable the child to receive educational benefits. *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Knable v. Bexley City Sch. Dist.,* 238 F.3d 755, 763 (6th Cir.2001).

### B. The Court Remands the Case to the Hearing Officer

■ In this case, the parties dispute the first factor: whether the defendants violated IDEA. The plaintiffs contend that Ms. Goldstrom "signed every form that DCPS staff had provided her when she registered Andrew," but that the defendants "never proposed any special education for Andrew," thereby violating his procedural and substantive rights under IDEA. Pls.' Mot. at 2, 16, 19. In response, the defendants assert that Ms. Goldstrom neither provided DCPS with written consent nor made Andrew available for an evaluation.

Defs.' Opp'n at 2–3, 5, 9–11. The defendants therefore contend that "DCPS did not fail to offer an appropriate program or placement of Andrew and no violation of the IDEA occurred." *Id.* at 3.

A review of the administrative record reveals that the hearing officer did not address the initial question as to whether or not the defendants violated IDEA.[2] A.R. at 1–4, 100–46; *see also* Pls.' Mot. at 2 (stating that "the Hearing Officer made no findings as to whether DCPS had denied Andrew a FAPE"). Instead, the hearing officer skipped ahead to the question of reimbursement, denying reimbursement on the basis of various equity considerations. A.R. at 3–4. As noted, however, a prerequisite to reimbursement is a violation of IDEA. *Florence County*, 510 U.S. at 15, 114 S.Ct. 361; *Holland*, 71 F.3d at 420 n. 3; 20 U.S.C. § 1412(a)(10)(C)(ii). The court therefore remands the case to the hearing officer for appropriate action. *E.g., Kuszewski v. Chippewa Valley Schs.*, 117 F.Supp.2d 646, 650 (E.D.Mich.2000) (remanding the case to the hearing officer for a determination as to whether school officials had denied the plaintiff child a FAPE).

## IV. CONCLUSION

For the foregoing reasons, the court remands the case to the hearing officer. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 14th day of May, 2004.

---

2. The hearing officer did find that "[t]he mother provided no written referral for her child for evaluation." A.R. at 3. The hearing officer, however, discussed the effect of that omission only in the context of reimbursement, not in the context of IDEA compliance. *Id.* at 4.