Alexandra ALFONO et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA
et al., Defendants.

No. Civ.A.04 1834(RMU).

United States District Court,
District of Columbia.

Feb. 16, 2006.

Haylie Michelle Iseman, Michael J. Eig, Michael J. Eig and Associates, PC, Chevy Chase, MD, for Plaintiffs.

Veronica A. Porter, Office of Attorney General for the District of Columbia, Washington, DC, for Defendants.

*MEMORANDUM OPINION*

URBINA, District Judge.

GRANTING THE PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case is before the court on the plaintiffs' motion for summary judgment. The plaintiffs[1] bring this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400. They pray the court to overturn a Hearing Officer's conclusion that the defendants completed the child plaintiff's Individualized Educational Program ("IEP") prior to the start of the 2004–2005 school year and to provide the plaintiffs with reimbursement for tuition expenses for that school year. Because the defendants did not timely complete the child plaintiff's IEP prior to the start of the 2004–2005 school year, the court grants the plaintiffs' motion.

---

**1.** The Plaintiffs are Pedro and Kimberly Alfonso and their 6–year–old daughter.

## II. BACKGROUND

### A. Factual Background

The child plaintiff suffers from significant visual impairment. Compl. ¶ 6. Since 2002, she has attended a private preschool program at the National Children's Research Center ("NCRC"), Admin. R. at 5, where she receives specialized educational support, Compl. ¶ 10. On September 15, 2003, Mrs. Alfonso, the child plaintiff's mother, registered the child plaintiff at Shepherd Elementary ("Shepherd") and requested that defendant District of Columbia Public Schools ("DCPS") begin the process of determining the child plaintiff's eligibility for special education under IDEA. Compl. ¶ 12. After two DCPS-requested postponements, a Multi-Disciplinary Team ("MDT") met on March 12, 2004 and determined that the child plaintiff was eligible for IDEA services due to her visual impairment. Admin. R. at 6 ¶¶ 12, 13, 16. The MDT also began to develop the child plaintiff's IEP. Admin. R. at 6 ¶ 16. At the meeting, DCPS included in the child plaintiff's IEP a plan in which she would attend Shepherd, receive five 30-minute therapy sessions per week with a vision teacher, and receive the services of a designated aide. Id. at 103, 106. The IEP meeting notes section indicated that the child plaintiff would receive pre-Braille training, orientation and mobility services and would benefit from assistive technology. Id. at 89, 93. Furthermore, DCPS ordered three additional DCPS-conducted evaluations for the child plaintiff: occupational and physical therapy ("OT/PT"), orientation and mobility, and assistive technology. Id. at 7. The Alfonsos, however, declined to sign the IEP at the meeting, citing their desire to see the conclusions presented in the three evaluations. Id. On May 5, 2004, DCPS completed the OT/PT evaluation. Admin. R. at 113, 7 ¶ 20. On June 22, 2004, DCPS completed the assistive technology evaluation. Id. at 110, 7 ¶ 21. Finally, on July 20, 2004, DCPS completed the orientation and mobility evaluation, the final of the three outstanding evaluations. Id. at 108.

### B. Procedural Background

The Alfonsos requested a due process hearing after the completion of the occupational therapy evaluation, alleging that the school system's failure to complete the outstanding evaluations and identify the child plaintiff's needs resulted in a failure to offer her appropriate special education services in accordance with IDEA and District of Columbia law. Id. at 22. Through this administrative process, the plaintiffs sought relief in the form of reimbursement of the expenses incurred by educating the child plaintiff at NCRC for the 2003–2004 school year. Pl.'s Mot. for Summ. J. ("Pls.' Mot.") at 8.

On September 9, 2004, DCPS and the Alfonsos convened for a due process hearing. Pls.' Mot. at 8. During the hearing, the Hearing Officer reviewed the child's IEP and the completed assessments and, in addition, considered tuition reimbursement for the 2004–2005 school year. Admin. R. at 9. On September 20, the Hearing Officer issued his determination, and the next day issued an amended determination. Id. at 3. In the amended determination, the Hearing Officer concluded that the child plaintiff's IEP was completed in July 2004 after DCPS received all three assessments. Admin. R. at 2. Yet, the Hearing Officer issued an order to modify the IEP to include additional OT/PT consultations and for DCPS to recommend an orientation and mobility training plan. Id. The Hearing Officer also determined that NCRC was an appropriate educational program for the child plaintiff. Id. at 9. Accordingly, the Hearing Officer ordered DCPS to reimburse the plaintiffs for their tuition expenses at NCRC for part of the

**4**

2003–2004 school year. *Id.* The Hearing Officer, however, denied the plaintiffs' request for reimbursement for the 2004–2005 school year based on his finding that the child plaintiff's IEP was completed prior to the start of the 2004–2005 school year. *Id.* at 9–10.

During October and November of 2004, DCPS and the Alfonsos met three additional times to complete the child plaintiff's IEP for the 2004–2005 school year. Pls.' Reply at 4. On October 12, DCPS created the orientation and mobility goals and objectives, and on November 15, DCPS added goals and objectives relating to braille and assisted technology to the IEP. *Id.* The plaintiffs, however, again declined to sign the IEP, raising concerns of the IEP's inadequacy. Pls.' Mot. at 11. On October 21, 2004, the plaintiffs filed suit in this court, and on March 25, 2005, they brought this motion for summary judgment. The court now turns to that motion.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. Legal Standard for Private Placement Reimbursement

Congress enacted IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."

*Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C.Cir.2000). Before providing special-education services, a school district must conduct an individual evaluation to determine a child's eligibility under IDEA. *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 319 (4th Cir.2004). By law, the District of Columbia Public Schools ("DCPS") must conduct such an evaluation within 120 days of the date of the child's referral for evaluation. Pub.L. No. 105–277, Div. A, Sec. 101(c), Sec. 145 (1998). If the child qualifies as disabled and thus eligible for services, the school district must develop an IEP to meet the special educational needs of the child. *Lawson*, 354 F.3d at 319; *Calloway*, 216 F.3d at 3. A parent who objects to a child's identification, evaluation, or educational placement may request a due-process hearing before a hearing officer, and, if dissatisfied with the hearing officer's determination, may bring suit in state or federal court. *Calloway*, 216 F.3d at 3.

■ Under IDEA, parents who unilaterally place their child at a private school without the consent of school officials do so at their own financial risk. *Florence County Sch. Dist. 4 v. Carter*, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (citing *Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)); *Schoenbach v. Dist. of Columbia*, 309 F.Supp.2d 71, 76–77 (D.D.C.2004). Such parents may be reimbursed only if (1) the school officials' public placement violated IDEA and (2) the private-school placement was proper under IDEA. *Florence County*, 510 U.S. at 15, 114 S.Ct. 361; *Holland v. Dist. of Columbia*, 71 F.3d 417, 420 n. 3 (D.C.Cir.1995) (noting that this circuit has ordered reimbursement "where the public agency violated [IDEA] and the parents made an appropriate placement"); *see also* 20 U.S.C. § 1412(a)(10)(C)(ii) (stating that re-

imbursement may be appropriate if "the agency had not made a free appropriate public education available to the child in a timely manner prior to [the private-school] enrollment"). In analyzing the first factor of whether the public placement violates IDEA, the court undertakes a two-step sub-inquiry, asking (a) whether the school officials complied with the procedures set forth in IDEA, and (b) whether the IEP developed through IDEA procedures was reasonably calculated to enable the child to receive educational benefits. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 763 (6th Cir.2001).

### C. The Court Grants the Plaintiffs' Motion for Summary Judgment

■ The plaintiffs claim that they are entitled to reimbursement because DCPS failed to complete their child's IEP prior to the start of the 2004–2005 school year. Specifically, the plaintiffs argue that as a matter of law, under *Florence County*, DCPS must complete the IEP prior to the start of a school year or, otherwise, must reimburse a family for making an appropriate private school placement until the IEP is completed. *Florence County*, 510 U.S. at 15, 114 S.Ct. 361. The court agrees.

### 1. DCPS Failed to Complete the Plaintiff Child's IEP Prior to the 2004–2005 School Year.

■ The plaintiffs are entitled to reimbursement for the 2004–2005 school year if DCPS failed to produce a valid, written IEP prior to the start of that year. *Florence County*, 510 U.S. at 15, 114 S.Ct. 361; *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034. Although IDEA requires schools to provide eligible students with a written IEP, it "does not make clear what constitutes a

'written' IEP." *Mewborn v. Gov't of Dist. of Columbia*, 360 F.Supp.2d 138, 144 (D.D.C.2005). However, a written, complete IEP is important to serve a parent's interest in receiving full appraisal of the educational plan for her child, allowing a parent both to monitor her child's progress and determine if any change to the program is necessary. *Id.* Generally, an IEP must comply with both procedural and substantive requirements of IDEA. *Id.* at 143. A case involving an IEP is, therefore, about both form and content. *Id.* "The two concepts are not mutually exclusive; indeed, they work hand in hand to provide each individual student with an appropriate education under IDEA." *Id.* at 143.

The Supreme Court has held that a court reviewing an IEP case should make two inquiries. "First, did the school board procedurally comply with the [IDEA] and its implementing regulations? Second, is the IEP reasonably calculated to provide educational benefits to the child?" *Spielberg v. Henrico County Public Schools*, 853 F.2d at 258. Procedurally, each qualified child's IEP must be a written document containing

(A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

*Rowley*, 458 U.S. at 182, 102 S.Ct. 3034 (citing 20 U.S.C. § 1414(d)). "[F]ailures to meet the Act's procedural requirements are adequate grounds by themselves for holding that the school board failed to provide [the student] with a [free appropriate public education]." *Bd. of Educ. of Cabell County v. Dienelt*, 843 F.2d 813, 815 (4th Cir.1988).

DCPS created the child plaintiff's IEP on March 12, 2004, based on the discussion between the teachers, school officials and the Alfonsos. Admin. R. at 16. The standardized DCPS IEP form contained specific details regarding a vision service and identified the specific frequency, duration, and beginning date of services to be provided by a dedicated aide. *Id.* at 103, 106. The IEP, however, was not complete. Specifically, DCPS employees wrote in the IEP meeting notes section that the child plaintiff was to receive pre-Braille training, orientation and mobility services, and was to benefit from assistive technology. *Id.* at 89, 93. However, DCPS was silent from March 12, 2004 until the meetings in October and November regarding the details of how it would provide the services, including start and end dates, frequency, and goals. The IEP meeting notes, therefore, fail to include "a statement of measurable annual goals . . . [or] a description of how the child's progress toward meeting the annual goals . . . will be measured." 20 U.S.C. § 1414(d)(1)(A)(i)(II)–1414(d)(1)(A)(i)(III). As a result, the IEP does not comply with the procedural requirements of the IDEA. *Mewborn*, 360 F.Supp.2d at 144. Although DCPS provided addenda and amendments to the IEP, these additions do not allow the child's parent to "[know] exactly how her child will be spending time during school," nor do they make "explicit the time for 'counseling,' 'speech therapy,' and 'specialized instruction.'" *Mewborn*, 360 F.Supp.2d at 144 (citation omitted). These

extraneous materials fail to meet the procedural requirements of an IEP, requiring a "statement of the child's present levels of educational performance" and a "statement of measurable annual goals." *Id.*, at 144–145.

■ In addressing a claim under IDEA, a court must defer to the administrative fact findings, *S.H. v. State–Operated School District of the City of Newark*, 336 F.3d 260, 270 (3d Cir.2003), and give weight "to the expertise of the hearing officer and school officials responsible for the child's education," *Lyons v. Smith*, 829 F.Supp. 414, 418 (D.D.C.1993). While the Hearing Officer's decision is entitled to deference, the court may grant relief from such a decision based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii). In this case, the Hearing Officer concluded that in June 2004, the child plaintiff's IEP was complete. Admin. R. at 8. In this same determination, however, the Hearing Officer acknowledged that the orientation and mobility evaluation was not completed until July 2004. *Id.* at 8. He determined that because this evaluation did not present any new information or issues that weren't previously recommended by the plaintiffs' specialist, the outstanding evaluation was already incorporated into the IEP. *Id.* at 8. In addition, in the plaintiff's motion for summary judgment presented to the Hearing Officer, the plaintiffs specifically objected to the lack of goals and objectives in the child's IEP. Admin. R. at 49. The Hearing Officer did not address this matter in his determination, even though goals and objectives are specifically required by IDEA. 20 U.S.C. § 1414(d).

■ The court must give "due weight" to the Hearing Officer's determination, *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034, and accept all justifiable inferences in the defendant's favor, *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Here, however, the Hearing Officer's ruling is incorrect under IDEA because it fails to consider the undisputed evidence, including the written IEP itself, that the IEP did not include goals and objectives as required by IDEA. Admin. R. 64. The court concludes, therefore, that the IEP was not complete until November 2004, at which time the IEP included measurable goals and objectives. Because the school district must comply with the specific procedural requirements of IDEA, *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034, the court reverses the Hearing Officer's determination.

The Hearing Officer determined that the IEP was complete prior to the 2004 school year because, *inter alia,* "the [assessments] completed in the summer [did] not call for any additional services than those already recommended by the parents' evaluations submitted to DCPS [in] December 2003." Admin. R. at 9. Specifically, the Hearing Officer pointed out that the parents' vision expert recommended that a vision teacher was sufficient to provide the child plaintiff orientation and mobility services and her OT/PT evaluation was reiterated by DCPS's own assessment as completed in the summer of 2004. *Id.* at 11. Corroborating the Hearing Officer's determination, DCPS asserts that,

> at the time of the March 12, 2004 IEP, there remained two outstanding evaluations to be completed ... Nevertheless, the defendants were already aware that the student would benefit from these services, and indicated their intention to provide such services in the March 12, 2004 IEP.

Defs.' Opp'n at 10.

The defendant's awareness that services are needed, however, does not fulfill the procedural requirements of IDEA, which requires "measurable goals, including benchmarks or short-term objectives ...

and how the child's progress toward the annual goals will be measured." *A.I. ex rel. Iapalucci v. Dist. of Columbia,* 402 F.Supp.2d 152, 159; 20 U.S.C. § 1414(d); *see also Diatta v. Dist. of Columbia,* 319 F.Supp.2d 57, 63 (D.D.C.2004) (stating that a complete IEP "must" include "measurable goals, including benchmarks or short-term objectives"). At the MDT meeting on March 12, 2004, DCPS meeting notes stated that the student did "need orientation and mobility and assistive technology." Defs.' Opp'n at 10. Even though these evaluations were completed by July 20, 2004, the defendants did not incorporate the results into the child plaintiff's IEP by establishing goals and objectives or a means for measuring her progress until November of 2004. Pls.' Reply at 4. The court, therefore, concludes that the Hearing Officer's determination is incorrect as a matter of law because the defendants failed to meet the procedural requirements of IDEA to complete the IEP until November 15, 2004.

### 2. The Plaintiffs are Entitled to Reimbursement for Part of the 2004–2005 School Year Tuition

██ Although DCPS failed to provide a complete IEP that complied with the strict procedural requirements of IDEA until November 2004, the plaintiffs are only entitled to reimbursement if: 1) the defendants failed to comply procedurally with IDEA, and 2) NCRC was an appropriate placement. *Florence County,* 510 U.S. at 15, 114 S.Ct. 361. Having determined that DCPS did not comply with the procedural requirements of IDEA, the court now considers whether NCRC was an appropriate placement for the child plaintiff. The Hearing Officer determined, and the parties do not dispute, that NCRC was a proper placement under IDEA. Admin. R. 8. Because the court should defer to the hearing officer's factual findings ab-

sent contrary evidence, *S.H.,* 336 F.3d at 269–271, the court concludes that NCRC is an appropriate placement for the child plaintiff, *Lyons,* 829 F.Supp. at 418 (giving deference to the hearing officer and school official's expertise in a child's education). Therefore, because the plaintiffs have satisfied both prongs set forth by *Florence County,* the court determines that they are entitled to reimbursement for tuition costs that they have incurred at NCRC from the commencement of the 2004–2005 school year until the completion of the child plaintiff's IEP on November 15, 2005.

### D. The Court Awards the Plaintiffs Attorneys' Fees & Costs

Because the plaintiffs have prevailed on their motion for summary judgment, the court concludes that they are entitled to reasonable attorneys' fees and costs. *Herbin v. Dist. of Columbia,* 362 F.Supp.2d 254, 265 (D.D.C.2005) (citing 20 U.S.C. § 1415(i)(3)(B)). The court accordingly directs the parties to file further briefing on the matter. Specifically, the court orders the plaintiffs to provide an affidavit indicating a Bill of Costs.

### IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for summary judgment. The parties are to provide the court with further briefing on the matter of attorneys' fees and costs. An order directing the parties in a manner consistent with this memorandum opinion is separately and contemporaneously issued this 16th day of February, 2006.