Tanisha BRIDGEFORTH,
et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA,
et al., Defendants.

Civil Action No. 95–1195 (JHG).

United States District Court,
District of Columbia.

July 10, 1996.

**8**

Francisco Lopez, Jr., Bogin & Eig, P.C., Washington, DC, for plaintiffs.

Beatrice E. Hendricks, District of Columbia, Corporation Counsel, for defendants.

### *MEMORANDUM OPINION AND ORDER*

JOYCE HENS GREEN, District Judge.

Presently pending is plaintiffs' Motion for Attorneys' Fees and Costs. For the reasons stated below, plaintiffs are awarded $13,648.57 in attorneys' fees and expenses.

### I. *BACKGROUND*

The present case stems from the resolution of an earlier action, *Cooper v. District of Columbia*, C.A. No. 95–0538. In *Cooper*, the District of Columbia Department of Human Services' Mental Retardation and Developmental Disabilities Administration notified parents that it intended to discontinue funding for the United Cerebral Palsy Therapeutic Nursery Program ("UCP–TNP") after March 31, 1995. Plaintiffs in *Cooper*, represented by the same counsel as in the present case, were ten program participants and their parents. On March 24, 1995, following

a settlement by the parties which, *inter alia*, continued funding for the UCP–TNP through June 9, 1995, the Court issued a Consent Order. Among other issues, the Order addressed the matter of Extended School Year ("ESY") placements, which would continue an eligible child's educational services beyond the standard school year. The Consent Order directed the defendants to provide parents with notice of ESY placements no later than May 9, 1995 for students whose Individualized Education Program ("IEP") indicated a need for such services. In addition, the *Cooper* Consent Order required the District to determine each student's program needs and issue, prior to the end of the school term on June 9, 1995, appropriate notices concerning future educational plans, including ESY placement if appropriate.

After the District of Columbia allegedly failed to provide timely notices of ESY placements, in violation of the Consent Order, plaintiffs Tanisha Bridgeforth ("Bridgeforth") and seventeen other minor students requested individual due process hearings to obtain ESY services.[1] Hearings for sixteen of the students were scheduled for the same day, June 6, 1995. Plaintiffs objected to holding sixteen hearings on the same day, contending that this schedule made meaningful individual determinations impossible. Plaintiff Bridgeforth, however, did receive an individual due process hearing on June 6, 1995, and the hearing officer determined that she should receive ESY services. The other children did not obtain due process hearings prior to the commencement of the *Bridgeforth* litigation.

On June 22, 1995, Bridgeforth and seventeen other students filed a complaint and a request for a Temporary Restraining Order ("TRO"), alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Plaintiffs sought an injunction requiring the District to provide ESY services for the plaintiffs at UCP–TNP. On June 23, 1995, Judge Friedman, in his

---

1. The majority of the hearing requests are dated May 10, 11, or 12, 1995; the hearing requests for two plaintiffs are dated June 6, 1995. Although the Consent Order only required notice by May 9 for students whose IEP indicated a need for such services, counsel nevertheless filed due process

hearing requests on behalf of all plaintiffs, only some of whose IEPs included ESY placement. Under the Consent Order, prepared for the Court by the parties, notice for those students whose IEP did not include ESY was not required until June 9.

capacity as motions judge, issued a TRO only with respect to Bridgeforth, because the other plaintiffs had not yet completed the administrative process. Judge Friedman determined that the motion for a TRO as to the remaining children should await resolution by this Court after a hearing on June 27, 1995.[2]

Following intensive and concentrated discussions between counsel and the Court on the morning the hearing was to take place, the parties resolved their dispute. The District of Columbia agreed to provide and fund summer services for all plaintiffs from July 5, 1995 through August 25, 1995. In light of the parties' resolution of their claims, no determinations were made by the Court concerning the eligibility of the plaintiffs other than Bridgeforth for ESÝ services or concerning the matter of the District's alleged violations of the *Cooper* Consent Order.

Thereafter, the plaintiffs filed the instant Motion for Attorneys' Fees and Costs. Plaintiffs seek a total of $18,621.07 in attorneys' fees and expenses. Defendants object to plaintiffs' fee request and contend that plaintiffs are only entitled to fees and costs in the amount of $8,408.12. In general, defendants argue that plaintiffs are not entitled to fees and expenses for those plaintiffs who did not exhaust their administrative remedies, and they contend that other fees and expenses are not sufficiently documented to justify an award.

## II. *DISCUSSION*

The IDEA authorizes the Court to award reasonable attorneys' fees to a prevailing party. 20 U.S.C. § 1415(e)(4)(B). A fee award must reflect the rates prevailing in the community for the kind and quality of services furnished, *id.* at § 1415(e)(4)(C), and must be in line with rates of attorneys with comparable skill, experience, and reputation. § 1415(e)(4)(F). The Court must reduce a fee award if the time spent is excessive considering the nature of the proceeding. § 1415(e)(4)(F)(iii).

Unquestionably, plaintiffs and their counsel are entitled to fees for their efforts in this case. However, the amount of attorneys' fees and costs available to plaintiffs depends in large part on whether the attorneys' fees provision of IDEA authorizes a fee award for plaintiffs who prevail at the settlement level but who did not first exhaust administrative remedies before filing suit.

The IDEA establishes a clear and mandatory system of procedural protections, including impartial due process hearings and judicial review, to facilitate cooperation by parents and local education agencies in securing appropriate educational plans for disabled children. *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Powers v. Indiana Dept. of Educ.*, 61 F.3d 552, 553 (7th Cir.1995). Congress clearly intended for the procedural safeguards to ensure that decisions were made by the most appropriate parties, *i.e.*, parents and school officials. *Hendrick Hudson*, 458 U.S. at 205–06, 102 S.Ct. at 3050–51. Thus, conformance with the protective procedures set forth in the statute is of paramount importance. *Id.* Parents may, however, bypass the administrative process if they can show that exhaustion would be futile or inadequate. *Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988). The burden of proving an exception to the exhaustion requirement rests upon the party asserting the exception. *Id.; see also Koster v. Frederick County Bd. of Educ.*, 921 F.Supp. 1453, 1455 (D.Md. 1996).

In this case, it is clear that 17 of the 18 plaintiffs did not exhaust administrative remedies prior to filing suit in court. In their complaint, the plaintiffs briefly mention that "[e]xhaustion of administrative remedies is futile." Complaint at 16. Aside from this scant reference to futility, there is no supportive reasoning or proof whatsoever within the complaint or the record as a whole that would justify excusing these plaintiffs from the exhaustion requirement. This is particularly true for those plaintiffs whose current IEP did not include extended school year services.

2. The June 27, 1995 hearing concerned both the Motion for a TRO in the *Bridgeforth* case as well as plaintiffs' Motion for Contempt for alleged violations of the *Cooper* Consent Order.

It appears to the Court that plaintiffs acted too hastily in bringing suit in this case. As previously noted, plaintiffs moved for contempt in *Cooper*, alleging that the District's failure to provide notice of ESY placements violated the Consent Order. The Court issued an order for the District to show cause why it should not be held in contempt, and scheduled a hearing on plaintiffs' motion. Rather than seeing their motion for contempt to fruition and seeking relief through that route, however, counsel commenced the administrative fair hearing process for children who were plaintiffs in the *Cooper* case as well as children who were not part of *Cooper*. Then, without exhausting administrative remedies or explaining why exhaustion was futile, plaintiffs filed *Bridgeforth*.

▇ Still, plaintiffs argue that they are nonetheless "prevailing parties," and therefore entitled to attorneys' fees, because they materially altered the legal relationship between the parties to their benefit. "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties," and this "touchstone" is a precondition to prevailing party status. *Texas State Teachers Ass'n v. Garland Independent Sch. Dist.*, 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989); *Beard v. Teska*, 31 F.3d 942, 950 (10th Cir.1994). Moreover, "[t]he fact that [plaintiffs] prevailed through a settlement rather than through litigation does not weaken [their] claim to fees." *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980); *Beard*, 31 F.3d at 950.

There is no doubt that plaintiffs achieved considerable success in this litigation, and materially altered the legal relationship of the parties to plaintiffs' benefit. Indeed, the settlement procuring ESY services for all plaintiffs achieved the very benefit that plaintiffs sought in bringing suit. Moreover, at the time the settlement was reached, no determination had been made concerning whether the non-exhausting plaintiffs were appropriately before the Court. Thus, at the time of the settlement, the initial plaintiffs remained plaintiffs and acquired "prevailing party" status.

The Court has some sympathy for defendants' position that plaintiffs should not be permitted to garner the benefit of an attorneys fees award through short-circuiting the administrative process, filing suit in court, and obtaining a favorable settlement. Still, the District should have done more to protect its interests, *e.g.*, it could have insisted that reduced attorneys fees be part of the settlement package, or moved to dismiss the non-exhausting plaintiffs prior to entering into a settlement agreement. The District did not do so, however, and, as a consequence, all plaintiffs were afforded the benefits of the settlement agreement and obtained "prevailing party" status as a result.[3] Accordingly, due to the unusual scenario of this case, attorneys fees are recoverable for efforts spent on behalf of all plaintiffs, and not just the plaintiff who first exhausted her administrative remedies.

### *Reasonableness of Fees Sought*

▇ In addition to determining whether fees are recoverable for the non-exhausting plaintiffs, the Court must determine whether the remainder of plaintiffs' fee request is reasonable. The Court has considerable discretion in evaluating the reasonableness of plaintiffs' fee request and in determining the appropriate award. *Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C.Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 71 (1994). And, as previously stated, the Court must reduce a fee award if the Court finds the request excessive.

▇ Upon review of plaintiffs' fee request, the Court has determined that certain charges are excessive in relation to the nature of the activity charged. In several instances, plaintiffs charge an identical amount for *each* plaintiff for time spent by an attorney preparing virtually identical documents on behalf of each plaintiff. For example:

---

3. As prevailing parties, plaintiffs would have been entitled to attorneys fees at whatever level they prevailed, administrative or judicial. *Moore v. District of Columbia*, 907 F.2d 165 (D.C.Cir.), *cert. denied*, 498 U.S. 998, 111 S.Ct. 556, 112 L.Ed.2d 563 (1990); *Barlow–Gresham Union High School Dist. No. 2 v. Mitchell*, 940 F.2d 1280, 1285 (9th Cir.1991).

1. Plaintiffs seek 18 minutes in attorney time, at $25.50, for each of 28 "Letter[s] to Cecilia Wirtz, Esq. re: document request," for a total charge of $714;

2. Plaintiffs seek 18 minutes in attorney time, at $25.50, for each of 18 "Hearing request[s] to Dr. Burch," for a total charge of $459. Interestingly, the charge for one of the letters is dated July 5, 1995, well *after* final resolution of this case. The letters are identical, save for the name of the child and his or her parent(s). *See* Exhibits 1–18, attached to plaintiffs' Motion for Temporary Restraining Order (June 22, 1995) [4];

3. Plaintiffs seek 18 minutes in attorney time, at $25.50, for each of 15 "Letter[s] to Dr. Burch re: scheduling hearing," for a total charge of $382.50;

4. Plaintiffs seek 1½ hours in attorney time, at $127.50, for "[p]repar[ing] discovery for due process hearing[s]" on behalf of each of 16 plaintiffs, for a total charge of $2040.00. Incredibly, all this time (24 hours) is billed by the same attorney for the same day, June 1, 1995. This same attorney billed another six hours for June 1, 1995 for her research activities, for a total of 30 billed hours for one attorney for one 24 hour day.

5. Plaintiffs seek 18 minutes, at $25.50, for each of 17 "[l]etter[s] to Donovan Anderson, Esq. re: additional document for due process hearing," for a total charge of $433.50;

6. Plaintiffs seek 18 minutes, at $25.50, for each of 16 "[l]etter[s] to Lynn Milgram re: confirmation to attend hearing" and "follow-up conversation," for a total charge of $408. According to plaintiffs' submission, 16 separate "follow-up conversation[s]" took place between the attorney and Ms. Milgram on the same day, June 5, 1995;

7. Plaintiffs seek 18 minutes, at $25.50, for each of 16 "[l]etter[s] to Donovan Anderson, Esq. re: additional witness for due process hearing," for a total charge of $408; and

8. Plaintiffs seek 18 minutes, at $25.50, for each of 17 "[l]etter[s] to client re: status of ESY services," for a total charge of $433.50.

As is plainly evident from the above-listed examples, in some instances plaintiffs seek fees far in excess of what is reasonable for the work performed. In this age of computer technology, the Court simply cannot countenance these substantial separate attorney charges for preparation of virtually identical documents on behalf of similarly-situated plaintiffs, when the task simply involves printing another document.

Moreover, the Court has reviewed copies of the letters, submitted by defendants, and compared them with plaintiffs' fee request. In several instances, separate time charges are sought for numerous plaintiffs for simple letters which themselves are written on behalf of multiple plaintiffs. *See* Def. Exh. 1–7, copies of which are attached to this Memorandum Opinion and Order. For example, Def. Exh. 3 is a May 22, 1995 letter from plaintiffs' counsel to Dr. Robert Burch, requesting that immediate hearings be scheduled for 16 students, whose names are listed in the letter. Plaintiffs' fee submission seeks separate 18 minute charges for 15 plaintiffs for preparation of the same letter. Plaintiffs' fee request in connection with these boilerplate documents is unquestionably excessive. Accordingly, plaintiffs shall be awarded only a single charge for each of the above-listed activities, for a total award of $306.00. This corresponds to compensation for nearly four hours of attorney time for preparation of several simple and routine documents, in contrast to the 62 hours sought by plaintiffs.[5]

---

4. While the Court does not have copies of all the documents cited, the Court has sufficient examples to indicate that the documents prepared by counsel in this case were identical, save for the name of the plaintiff in some instances. *See, e.g.,* Def. Exh. 1–7, attached to defendants' opposition to plaintiffs motion for attorneys fees.

5. The Court notes that it has calculated counsels' hourly rates from counsels' submission; however, in the future, the rates should be explicitly set forth and explained *by counsel* in their original submission.

This adjustment reduces plaintiffs' fee award from the $18,621.07 sought by plaintiffs to a more reasonable sum of $13,648.57.

### III. CONCLUSION

For the reasons expressed above, it is hereby

ORDERED that plaintiffs are awarded $13,648.57 in attorneys' fees and costs. A separate judgment will be issued this date.

IT IS SO ORDERED.

## APPENDIX

BOGIN AND EIG, P. C.
ATTORNEYS AT LAW
SUITE 300
778 MASSACHUSETTS AVENUE, N. W.
WASHINGTON, D. C. 20036
(202) 667-7373
FACSIMILE: (202) 667-9146

March 23, 1995

Cecilia Wirtz, Esq.
Attorney-Advisor
D.C. Public Schools
Room 1114
415 12th Street, NW
Washington, DC 20004

RE: United Cerebral Palsy Therapeutic
Nursery Program
*BY FACSIMILE*

Dear Ms. Wirtz:

I am writing to request all documents regarding the following students, all of whom attend the Therapeutic Nursery Program at Carver Educational Center. I am enclosing copies of the authorization forms for each student for this purpose. The students are as follows:

Jerrell Cole
Willow Cooper
Edwina Edmundson
Jerome Mayo
Steven Shane Morgan
Aaron Payne
Jonathan Rood, Jr.
Marquette Roy
Nicholas A. Taylor.

Thank you for your prompt attention to this matter.

Sincerely,

Francisco Lopez

Enc.

FL/hmi

DEFT./RESP.
EXHIBIT 1
CASE# CA95-1195
JHG

14

**BOGIN AND EIG, P. C.**
ATTORNEYS AT LAW
SUITE 300
1778 MASSACHUSETTS AVENUE, N. W.
WASHINGTON, D. C. 20036
(202) 887-7373
FACSIMILE: (202) 887-8148

May 11, 1995

Cecelia Wirtz, Esq.
Attorney-Advisor
D.C. Public Schools
Room 1114
415 12th Street, NW
Washington, DC 20004

RE: United Cerebral Palsy Therapeutic
Nursery Program
*BY FACSIMILE*

Dear Ms. Wirtz:

According to my records, in my letter of March 23, 1995, I requested documents for each of the following students, however have yet to receive any documents. I would ask that you forward these to our offices as soon as possible. The students are as follows:

Jarrell Cole
Willow Cooper
Edwina Edmundson
Jerome Mayo
Steven Shane Morgan
Aaron Payne
Jonathan Rood, Jr.
Marquette Roy
Nicholas A. Taylor

Thank you for your prompt attention to this matter.

Sincerely,

Francisco Lopez

FL/hmi

**BOGIN AND EIG, P. C.**
ATTORNEYS AT LAW
SUITE 300
1776 MASSACHUSETTS AVENUE, N. W.
WASHINGTON, D. C. 20036
(202) 857-7373
FACSIMILE: (202) 857-0146

5-22-95

May 22, 1995
By Facsimile

Dr. Robert Burch
Director, Student Hearing Office
D.C. Public Schools
415 Twelfth Street, NW
Washington, D.C. 20004

Dear Dr. Burch:

I am writing to request that immediate hearings be scheduled for the following students:

| | |
|---|---|
| Tanisha Bridgeforth | Steven Shane Morgan |
| Jerrell Cole | Aaron Payne |
| Willow Cooper | Tarkus Albedo Pollard |
| Brian Crockett | Jonathan Rood, Jr. |
| Tristan Dew | Marquette Roy |
| Edwina Edmundson | Eries Seymore |
| Monet Gaskins | Raasheem Jamal Sharpe |
| Jerome Mayo | Nicholas A. Taylor. |

As you are aware, we have requested due process hearings for these students to challenge the school system's failure to propose Extended School Year services, as previously agreed to in a consent order. I am attaching that order for your review. Since I understand that DCPS employees will be furloughed beginning June 9, 1995, I am requesting that the hearings be scheduled prior to that time. I am currently available on the afternoons of May 31, and June 2, and all day on June 6 and 8, 1995. I would ask that the hearings be confirmed by May 24, 1995, or that you provide us with written confirmation that these hearings cannot be scheduled prior to June 9, 1995.

I await your prompt response.

Sincerely,

FRANCISCO LOPEZ

Enc.

DEFT./RESP. EXHIBIT 3 CASE# CA 95-1195 JHO

16

BOGIN AND EIG, P. C.

ATTORNEYS AT LAW
SUITE 300
1776 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D. C. 20036

(202) 667-7373
FACSIMILE: (202) 667-9440

5-25-95

May 25, 1995
By Facsimile

Dr. Robert Burch
Director, Student Hearing Office
D. C. Public Schools
415 Twelfth Street, NW
Washington, D.C. 20004

RE: Tanisha Bridgeforth; Jerrell Cole; Willow Cooper; Brian Crockett; Tristan Dew; Edwina Edmundson; Monet Gaskins; Jerome Mayo; Steven Shane Morgan; Aaron Payne; Tarkus Albedo Pollard; Jonathan Rood, Jr.; Marquette Roy; Erica Seymore; Raasheem Jamal Sharpe; Nicholas A. Taylor.

Dear Dr. Burch:

It is my understanding that you have proposed that we conduct all the hearings for the above-named students on June 6, 1995. While I believe that there are similar issues with respect to most of these students, I do not see how we can possibly conduct individual hearings on Extended School Year services for each of these students in only one day. Even if we were to have a full eight hour day without breaks, that only allocates thirty minutes for each student.

Therefore, I would like an explanation of what you are proposing and specific details if it is something other than the usual individual due process hearing.

I await your prompt response.

Sincerely,

FRANCISCO LOPEZ

DEFENDANT'S
EXHIBIT
4 CJH
CA 95-1195

JUN 02 1995
RECEIVED

BOCIN AND EIG, P. C.
ATTORNEYS AT LAW
SUITE 300
1776 MASSACHUSETTS AVENUE, N. W.
WASHINGTON, D. C. 20036
(202) 667-7373
FACSIMILE: (202) 667-9145

June 2, 1995

Donovan Anderson, Esq.
Attorney Advisor, D.C. Public Schools
415 12th Street, NW, Room 1114
Washington, D.C. 20004

Re:

| | |
|---|---|
| Tanisha Bridgeforth | Steven Shane Morgan |
| Jerrell Cole | Aaron Payne |
| ~~~~ | Tarkus Albedo Pollard |
| Brian Crockett | Jonathan Rood, Jr. |
| Tristan Dew | Marquette Roy |
| Edwina Edmundson | Erica Seymore |
| Monet Gaskins | Raasheem Jamal Sharpe |
| Jerome Mayo | Nicholas A. Taylor |

Dear Mr. Anderson:

For the June 6, 1995, hearings for each of the above-named students, in addition to all documents and witnesses previously disclosed, we will be relying upon the following enclosed document:

1. DCPS Division of Special Education and Pupil Personnel Services, Implementation Guidelines for Extended School Year Services.

Sincerely,

Francisco Lopez

Enc.
cc: Dr. Robert Burch (w/ enc.)

FL/hms

DEFENDANT'S
EXHIBIT
5
CA 95-1195 JHG

18

BOGIN AND EIG, P. C.

ATTORNEYS AT LAW
SUITE 300
1776 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D. C. 20036

(202) 667-7979
FACSIMILE: (202) 667-9140

RECEIVED
'95 JUN -9 PM 1: 01
D.C. PUBLIC SCHOOLS
LEGAL SERVICES BRANCH

June 7, 1995

Cecelia Wirtz, Esq.
Attorney-Advisor
D.C. Public Schools
Room 1114
415 12th Street, NW
Washington, DC 20004

RE: Brian Crockett Erica Seymore
 Tristan Dew Raasheem Jamal Sharpe
 Lenny Haynes Ernest Thompkins
 Michael Plummer

Dear Ms. Wirtz:

I am writing to request all documents regarding the above-named students, and am enclosing copies of our signed authorization forms for each student. I would ask that copies of documents be forwarded to our offices as soon as possible.

Thank you for your prompt attention to this matter.

Sincerely,

Francisco Lopez

Enc.

FL/hmi

DEFENDANT'S
EXHIBIT
6
CA95-1195-JHG

**BOGIN AND EIG, P. C.**
ATTORNEYS AT LAW
SUITE 300
1776 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D. C. 20036

(202) 667-7373
FACSIMILE: (202) 667-9140

June 8, 1995

1995 JUN -9 PM 1:02 RECEIVED
D.C. PUBLIC SCHOOLS LEGAL SERVICES BRANCH

Donovan Anderson, Esq.
Attorney Advisor, D.C. Public Schools
415 12th Street, NW, Room 1114
Washington, D.C. 20004

Re: Tanisha Bridgeforth Steven Shane Morgan
 Jerrell Cole Aaron Payne
 Willow Cooper Tarkus Albedo Pollard
 Brian Crockett Jonathan Rood, Jr.
 Tristan Dew Marquette Roy
 Edwina Edmundson Erica Seymore
 Monet Gaskins Rasheem Jamal Sharpe
 Jerome Mayo Nicholas A. Taylor

Dear Mr. Anderson:

For the hearings for the above-named students, currently scheduled for July 6 and 7, 1995. in addition to all documents and witnesses previously disclosed, we will be relying upon the following witness:

Karen Grady, United Cerebral Palsy Foundation.

Sincerely,

Francisco Lopez

cc: Dr. Robert Burch (w/ enc.)

FL/hmi

**DEFENDANT'S EXHIBIT**
7
CA 95-1195-JH