**Jervon HERBIN, a minor, by his legal guardian, Jeraldine HERBIN, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**No. CIV. A. 02–1185 (RWR).**

United States District Court, District of Columbia.

March 29, 2005.

---

5. Dr. Thorne and Dr. Brownlee examined five of the same officers.

James E. Brown, Roy Carleton Howell, Murrell & Brown, Washington, DC, for Plaintiff.

Urenthea McQuinn, Office of The Corporaion Counsel, Washington, DC, for Defendants.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Jeraldine Herbin brought this action on behalf of her grandson, Jervon Herbin,

seeking review of an independent hearing officer's decision in an administrative due process hearing held on plaintiff's allegation that the defendants, the District of Columbia and the Superintendent of the District of Columbia Public Schools ("DCPS"), failed timely to provide her requested special education services reevaluation of Jervon under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487 (2000). The hearing officer determined that Jervon was not denied a free appropriate public education since a four-month delay in conducting the requested reevaluation and responding to plaintiff's request was not unreasonable and because plaintiff did not set forth the grounds for her request. Plaintiff and defendants have cross-moved for summary judgment. Because the hearing officer did not err in determining that the delay in this case was reasonable, but because the hearing officer erred in interpreting the IDEA, the parties' motions for summary judgment will be granted in part and denied in part.

## BACKGROUND

Jervon Herbin is learning disabled and eligible for special education services under the IDEA. Pursuant to the Act, Jervon was evaluated for the school year in September of 2001 at Options Public Charter School ("OPCS") where he was enrolled. Following that evaluation, an Individualized Education Plan ("IEP") tailored to Jervon's needs was developed. (*See* Pl.'s Compl. Ex. JH–4 at 2.)

On January 11, 2002, just months after Jervon's evaluation, plaintiff, as legal guardian, sent a letter through counsel to OPCS's principal requesting that Jervon be "reevaluated for special education services." (*Id.;* Pl.'s Resp. to Defs.' Reply to Pl.'s Opp'n to Defs.' Summ. J. ("Resp.") Ex. JH–1.) The letter stated that a "comprehensive reevaluation of the student would include, but is not limited to: 1) a psycho-educational evaluation, 2) speech and language evaluation, 3) social history, 4) hearing and vision screenings, and 5) formal classroom observation." (Pl.'s Resp. Ex. at 3.) Plaintiff asked the principal to notify her of OPCS's intended action within 30 calendar days. (*Id.*)

Having received no response, plaintiff filed a due process hearing request on February 15, 2002, pursuant to 20 U.S.C. § 1415 and 34 C.F.R. § 300.507. (Pl.'s Mot. Summ. J. Ex. JH–2.) Plaintiff requested that the hearing officer address "[w]hether DCPS violated IDEA when it failed to complete the requested reevaluations," indicating that her request for OPCS to "fully evaluate the student" within 30 days had gone unheeded. (Pl's Compl. Ex. JH–2.) On April 11, 2002 during a conference call with plaintiff, OPCS represented that they were "willing to reevaluate the student and reconvene the IEP team by May 10 in settlement of the matter." (Pl.'s Compl. Ex. JH–3.) Plaintiff was unwilling to accept the "resolution without a finding on the record that the student's right to a free appropriate public education had been denied" (*id.*), and decided to proceed with a due process hearing after an agreed-upon one month continuance. (Pl.'s Mot. Ex. JH–3 at 2.)

The due process hearing was conducted on May 14, 2002. According to the hearing officer's determination report, the issue to be addressed at the hearing was whether Jervon had been "denied a free appropriate public education because Options Charter did not complete new evaluations within a thirty day period[.]" (Pl's Compl. Ex. JH–4 at 1.)[1] At the hearing,

---

**1.** The hearing officer denied as untimely plaintiff's request to raise other issues, but

plaintiff testified that the request for a reevaluation stemmed from Jervon's repeated disciplinary problems and a concern that he "may not be able to achieve academically at the same rate as his peers, and that perhaps too much pressure" was put on him to perform at an inappropriate academic level. (*Id.* at 2.) Although OPCS's representatives agreed that there were grounds for concern regarding Jervon's behavior, they also argued that the school had acted appropriately in response to plaintiff's request since Jervon had just been reevaluated prior to the beginning of the school year and because plaintiff had failed to provide reasons for the initial request. (Pl.'s Compl. Ex. JH–4 at 2–3.) Plaintiff also received at the hearing—for the first time—what she characterized as "old piecemeal evaluations" from OPCS. (Pl.'s Mem. in Supp. Of Mot. For Summ. J. at 8.)

After interpreting 34 C.F.R. § 300.536(b), an implementing regulation of the IDEA, to require that a party requesting a reevaluation show that "conditions warrant" one, the hearing officer noted that there were "no time limitations provided by [the] IDEA by which a school system must complete evaluations," and that the circumstances before him did not render a four-month delay in responding unreasonable.[2] (Pl.'s Compl. Ex. JH–4 at 3, 4.) Specifically, the hearing officer found that the existence of current evaluations,

the lack of emergency conditions, and the failure by plaintiff to provide reasons for the request justified the delay. The hearing officer concluded that the delay would not have been unreasonable even if defendants had been notified of the reasons for the request. However, "under other circumstances, that length of time might be considered excessive" and the officer warned that "this decision under these circumstances should not be generalized." (*Id.* at 4.)

Plaintiff alleges that the hearing officer's conclusions were erroneous, specifically challenging the officer's determination that a parent bears the burden to show that a requested reevaluation is warranted and that the four-month delay in responding in her case was not unreasonable. (Pl.'s Compl. at 5–6, ¶¶ 14–16, 18.) Plaintiff also alleges that defendants did not follow proper procedure under the IDEA, 20 U.S.C. §§ 1414–15, and the implementing regulations, 34 C.F.R. §§ 300.532–300.536, because defendants failed to respond to plaintiff's requested reevaluation with either a written notification, or by seeking a due process hearing on the request. (Pl.'s Compl. at 4, ¶ 12.) Plaintiff claims that OPCS has not yet reevaluated Jervon and requests that a reevaluation be ordered.[3]

Defendants' motion for summary judgment disputes whether plaintiff indeed re-

---

gave leave for plaintiff to bring those claims at another hearing. (Pl.'s Compl. Ex. JH–4 at 1.)

2. It appears that the OPCS response after the four-month delay mentioned by the hearing officer was OPCS's provision of the "old piecemeal evaluations" and its April 2002 representation in the conference call that it was willing to reconvene an IEP team and conduct the requested reevaluations. (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 8.)

3. In effect, plaintiff also argues that the "old piecemeal evaluations" provided to her at the

due process hearing are inadequate and not a reevaluation at all. Although a parent's unilateral determination of what constitutes an appropriate reevaluation does not, alone, entitle a plaintiff to relief, *see Kerkam v. McKenzie,* 862 F.2d 884, 886 (D.C.Cir.1988) (stating that "proof that loving parents can craft a better program than a state offers does not" entitle the parent to relief), plaintiff's complaint here is not that the old evaluations are inadequate, but that OPCS conducted no reevaluation at all.

quested a reevaluation,[4] but maintains that the hearing officer's determinations were nevertheless correct. Plaintiff has cross-moved for summary judgment on the grounds set forth in her complaint.

## DISCUSSION

The parties have cross-moved for summary judgment under Fed.R.Civ.P. 56(c), which provides for entry of summary judgment "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If neither party requests that the district court hear additional evidence prior to ruling on a motion for summary judgment, courts have construed a motion for summary judgment as a "procedural vehicle for asking [a] judge to decide the case on the basis of the administrative record." *Morton Cmty. Unit Sch. Dist. No. 709 v. J.M.,* 986 F.Supp. 1112, 1116 (C.D.Ill.1997) (internal quotations and citation omitted).

The IDEA allows " '[a]ny party aggrieved by the findings and decision' of the state administrative hearings 'to bring a civil action' " challenging that decision. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 204, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (quoting 20 U.S.C. § 1415(i)(2)(A)); 34 C.F.R. § 300.512(a) (2003).[5] The reviewing court must give due weight to the findings of the administrative officer, but less deference is appropriate than would normally be accorded an administrative decision. *See Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C.Cir.1988). A "party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *Id.* The burden of proof is by a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B)(iii); 34 C.F.R. § 300.512(b)(3). While the appropriate remedy is left to the discretion of the reviewing court, the court should not substitute its own judgment of what is in the best educational interests of a particular student for that of the hearing officer. *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. It is compliance with the procedural requirements of the IDEA that is the primary consideration of the reviewing court. *Id.* at 206–07, 102 S.Ct. 3034.

■ The IDEA was enacted, in part, to "ensure that all children with disabilities have available to them a free appropriate

---

**4.** Defendants argue throughout the pleadings and motions that plaintiff did not request a reevaluation in the letter of January 11, but rather only requested copies of Jervon's academic records. (Defs.' Mot. at 2.) It is clear from the record that plaintiff sent two letters that day, one of which requested the reevaluations at issue here. (Pl.'s Resp. Ex. JH–1.) The hearing officer reached the same conclusion, and admitted into evidence the relevant letter. (Pl.'s Compl. Ex. JH–4 at 1.) If the defendants never received this letter, that should have been addressed at the due process hearing. There is no indication in the record that defendants raised it at the hearing and there is no reason to question the hearing officer's finding on this issue. *See Leonard v. McKenzie,* 869 F.2d 1558, 1563 (D.C.Cir. 1989).

**5.** *Rowley* involved the Education of the Handicapped Act, the precursor to IDEA. *Rowley,* 458 U.S. at 179, 102 S.Ct. 3034.

public education that emphasizes special education and related services designed to meet their unique needs ...." 20 U.S.C. § 1400(d)(1)(A). The IDEA contemplates an interactive process for ensuring the educational needs of students, granting both "educators and parents ... the necessary tools to improve educational results for children with disabilities ...." 20 U.S.C. § 1400(d)(1)(C)(3); see also Rowley, 458 U.S. at 205, 102 S.Ct. 3034 (noting that "Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process"). "[T]he Act establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." Honig v. Doe, 484 U.S. 305, 311–12, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Consistent with the statutory scheme, Congress has required the "full participation of concerned parties throughout the development of the IEP" and has developed procedures to "assure much if not all [of the statutory purpose] in the way of substantive content in an IEP." Rowley, 458 U.S. at 206, 102 S.Ct. 3034. Procedural obligations are therefore critical to substantive fulfillment of the IDEA, and it is a reviewing court's duty to determine whether an educational authority has complied with the processes set forth in the Act. Id. at 206–207, 102 S.Ct. 3034.

## I. REVIEW OF TIMELINESS

A child is evaluated under section 1414 of the IDEA to determine whether he is a child with a disability and to determine his educational needs. 20 U.S.C. § 1414(a)(1)(B). The educational authorities are directed to "ensure that a reevaluation of each child with a disability is conducted ... if conditions warrant a reevaluation or if the child's parent or teacher requests a reevaluation, but at least once every 3 years[.]" Id. at § 1414(a)(2)(A). The Act and the implementing regulations are silent about the time frame within which an agency must conduct the evaluations, though the statutory framework does impose strict guidelines for the time within which an agency must conduct a due process hearing. See 34 C.F.R. § 300.511 (requiring that a decision be rendered for a requested due process hearing within 45 days of the request).

■ Guidance from the Office of Special Education Programs, a federal agency tasked with implementing the IDEA, regarding the timing of initial evaluations is not concrete and suggests that case-specific determinations must be made given that the statute sets no firm deadlines.[6] *Office of Special Education Programs Policy Letter in Response to Inquiry from Anonymous*, 21 Individuals with Disabilities Education Law Report 998, 1000 (1995). Reevaluations should be conducted in a "reasonable period of time," or "without undue delay," as determined in each individual case. *Office of Special Education Programs Policy Letter in Response to Inquiry from Jerry Saperstone*, 21 Individuals with Disabilities Education Law Report 1127, 1129 (1995).[7] Though vague,

---

**6.** The IDEA states simply that a local educational agency "shall ensure that a reevaluation of each child is conducted ... if conditions warrant a reevaluation, or if the child's parent or teacher requests a reevaluation, but at least once every 3 years[.]" 20 U.S.C. § 1414(a)(2).

**7.** The District of Columbia has imposed more stringent timelines for *initial* evaluations and

the interpretation of the IDEA requiring reasonableness shows that prompt resolution of disputes involving the educational placement of learning disabled children is imperative. *See Spiegler v. Dist. of Columbia,* 866 F.2d 461, 466–67 (D.C.Cir. 1989). "[D]elay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development. The interruption or lack of the required special education and related services can result in a substantial setback to the child's development." *Id.* at 467 (quoting 121 Cong. Rec. 37,416 (1975) (statement of Sen. Williams)); *see also Blackman v. Dist. of Columbia,* 277 F.Supp.2d 71, 83 (D.D.C.2003) (finding that the failure to provide a timely due process hearing within 45 days denied the student a free appropriate public education).

■ The hearing officer here determined that a four-month delay in responding to plaintiff's request for a reevaluation was not unreasonable. (Pl.'s Compl. Ex. JH–4 at 4.) After noting that the IDEA prescribed no time limitation for conducting a reevaluation and after examining the circumstances unique to plaintiff's request, the hearing officer concluded that

> [u]nder the circumstances presented in this case . . . the school did not deny the student a free appropriate public education by failing to complete the requested reevaluations in thirty days. The Hearing Officer notes that no allegation was made that the current placement is inappropriate. This Hearing Officer concludes that absent any specific language, the time for completing assessments must be measured by a standard of reasonableness in the context of the student's unique needs and situation.

placements ranging from 20 to 60 working

(*Id.* at 3–4.) The specific circumstances involved in the delay, noted the officer, included the lack of emergency needs, the existence of current evaluations, and the school's inability to determine why the reevaluation was necessary from plaintiff's initial request. The necessarily fact-specific and discretionary determination of reasonableness by a hearing officer should not be disturbed simply because a court's "own notions of sound educational policy" may differ from those of the school authorities. *See Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. Each of the three reasons proffered by the hearing officer to justify delay, in isolation, may not necessarily be "unique," as described by the hearing officer. However, the combination of factors, the factual record and statutory context show that the hearing officer's determination should not be overturned.

With respect to the lack of emergency needs, although the absence of an emergency cannot always justify a four-month delay in the resolution of a potentially time-sensitive request for a student reevaluation, the IDEA gives a parent procedural ways to challenge an educational agency's delays. If a parent feels a school's dilatory response is harmful, she may request a due process hearing and get a final resolution in 45 days. The regulations of the IDEA set forth a bright line rule for hearing determinations: a "public agency shall ensure that not later than 45 days after receipt of a request for a hearing . . . [a] final decision is reached in the hearing[.]" 34 C.F.R. § 300.511(a)(1). An aggrieved party is thus guaranteed by regulation a resolution within 45 days of seeking a hearing absent extenuating circumstances. *See Blackman,* 277 F.Supp.2d at 79 (stating that "[w]hile a slight delay in the provision of a hearing after a request has been made or

days. D.C. Mun. Regs. tit. 5, § 3010.1 (1983).

a slight delay in rendering a decision may be an excusable procedural infirmity in some cases, the failure to offer [a hearing] for months after the expiration of the 45–day period ... crosses the line from process to substance"). Of course, a party's request to a school for a reevaluation does not begin the 45–day calendar—only a request for a due process hearing does—but a party has the statutory right to a due process hearing "[w]henever a complaint has been received under subsection (b)(6)," which allows parents to present "complaints with respect to any matter relating to the identification, evaluation, or educational placement of [a] child or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(f)(1), (b)(6). If a parent sets forth concrete bases that an emergency exists, a hearing officer should factor those circumstances into her reasonableness calculus.[8]

Here, the delay in response was not aggravated by any allegation of an injury or harm that occurred specifically because of the delay. Though the brevity of an academic school year counsels against protracted delays in responding to requests for reevaluation, a delay may be reasonable and therefore not deprive the student of a free appropriate public education. Even a delay in the explicitly prescribed 45–day limit for due process hearing determinations may be overlooked as excusable, see *Blackman,* 277 F.Supp.2d at 79, and a delay in responding to a reevaluation request can be reasonable when no exigencies are present. Importantly, the hearing officer took note that plaintiff never alleged that the placement was inappropriate. (Pl's Compl. Ex. JH–4 at 4.)

With respect to the reevaluations conducted just before the school year began, while the officer did not explicitly state why the existence of current evaluations made the delay reasonable, the more current an evaluation and IEP determination, the less likely that a delay in responding to the reevaluation request will be prejudicial or injurious. Furthermore, the hearing officer noted that plaintiff did not "challenge the adequacy of the current evaluations, but [instead] contend[ed] that new assessments [were] needed because [Jervon] continue[d] to have behavioral and academic problems." (*Id.*) Assembling the battery of tests plaintiff requested, the experts required and the materials necessary for completion of psycho-educational evaluations, speech and language evaluations, hearing and vision hearings, and formal classroom observations would easily occasion some reasonable delay as well, as would assessing the need for the requested reevaluation in the absence of reasons given by plaintiff.

In addition, the four-month delay was not due solely to defendants' lack of diligence. Plaintiff was offered a settlement of the matter in April, with defendants offering to complete the evaluations and fulfill in whole plaintiff's initial request. Plaintiff declined the offer, extending the delay in the reevaluations herself, in order to preserve her rights to attorneys' fees as a prevailing party under the Act. (Pl.'s Compl. Ex. JH–4 at 2.)

Plaintiff cites the report of a hearing officer in another matter that 30 days is "sufficient time" for DCPS to "provide notice of their intent to reevaluate and conduct a reevaluation of the student." (Pl.'s Compl. Ex. JH–6 at 5.) IDEA due pro-

---

8. Some emergencies are explicitly addressed in the Act itself. For instance, a hearing officer is given the authority to suspend or change a student's placement for 45 days if there is, among other conditions, a substantial likelihood of injury to the child or others. *See* 20 U.S.C. § 1415(k)(2)(A).

cess hearing decisions are made on a case-by-case basis, and that report was at most, a useful indicator of what that school could legitimately accomplish in 30 days. *See Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. The report was not precedent binding upon the hearing officer here. (Pl.'s Compl. Ex. JH–4 at 3.) However, the hearing officer did consider the report and its 30–day observation, but nevertheless found that the delay for this case was reasonable. (*Id.*) The report that plaintiff cites also involved a different violation from the one alleged here. In the report, the hearing officer determined that school authorities had failed to notify the parents that reevaluation tests had been conducted, a direct violation of explicit statutory prescriptions under the Act and therefore a denial of a free appropriate public education. *See* 20 U.S.C. § 1414(b)(1) (requiring notice to parents of any evaluation procedures to be conducted); 34 C.F.R. § 300.503(a) (requiring prior written notice to parents regarding public agency evaluation decisions). The timeliness issue was ancillary to the procedural violations found by the hearing officer. (Pl.'s Compl. Ex. JH–6 at 5.)

Finally, the hearing officer's determination that the delay was reasonable was not tainted by her reliance on, as plaintiff argues, a faulty interpretation of § 1414(a)(2) which sets forth requirements for the re-evaluation of a student.[9] After discussing the requirements of a reevaluation process, the hearing officer stated that "even if [defendants] had known of [the] reasons" plaintiff had for requesting a reevaluation, the delay "would not constitute a denial of a free appropriate public education." (Pl.'s Compl. Ex. JH–4 at 4.) The hearing officer did therefore take account of plaintiff's arguments in his conclusions and found that the delay would have been reasonable regardless of which interpretation of § 1414(a)(2) controlled the matter. Given the informed judgment and presumed expertise of the hearing officer, the circumstances presented in this case, and the inconsequential nature of the purportedly erroneous interpretation of the Act, the delay in responding to the request for reevaluation was not unreasonable and it did not deny Jervon a free appropriate public education.

## II. INTERPRETATION OF REEVALUATION PROVISION § 1414(a)(2)

■ Plaintiff challenges the hearing officer's interpretation of § 1414(a)(2) finding that a reevaluation is necessary only if "conditions warrant" one.[10] (Pl.'s Compl.

---

**9.** Section 1414(a)(2) states in relevant part:

A local educational agency shall ensure that a reevaluation of each child with a disability is conducted ... if conditions warrant a reevaluation or if the child's parent or teacher requests a reevaluation, but at least once every 3 years[.]

20 U.S.C. § 1414(a)(2)(A). Plaintiff asserts that the hearing officer misinterpreted this provision when she concluded that:

A charter school or DCPS is not obligated to complete new evaluations upon request. There must be some showing that conditions warrant new evaluations.

(Pl.'s Compl. Ex. JH–4 at 4.) By contrast, plaintiff argues that under § 1414(a)(2)(A), "[she is] not required to prove that conditions warrant reevaluation[ ]," and that she is entitled to a reevaluation of Jervon upon request. (Pl.'s Mem. in Supp. Of Mot. For Summ. J. at 11.)

**10.** Plaintiff also states that defendants denied Jervon a FAPE by failing to notify her about their intentions to conduct or not to conduct a reevaluation. (Pl.'s Compl. at 4, ¶ 12; *see also* Comment to 34 C.F.R. § 300.536, 64 Fed.Reg. 12636 (March 1999) (responding to letters requesting clarification of the reevaluation process by providing that "if a parent requests a reevaluation, the public agency must either: (1) provide the parent with written notice of the agency's proposal to conduct the reevaluation; or (2) provide the parent with written notice of the agency's refusal to

at 5, ¶ 15–16.) The hearing officer stated that a school "is not obligated to complete new evaluations upon request" without "some showing that 'conditions warrant' a new evaluation," a statement that plaintiff contests. (Pl.'s Compl. at 5, ¶¶ 15–16.)

A court must defer to an agency's interpretation of a regulation or statute "if the meaning of the words used is in doubt. The intention of Congress or the principles of the Constitution in some situations may be relevant in the first instance in choosing between various constructions. But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation [or statute]." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). Of course, a regulation and its interpretation are irrelevant if Congress "has directly spoken to the precise question at issue" in the organic statute. *See Chevron U.S.A., Inc. v. NRDC*, 467

U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As this Circuit has stated,

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). In determining the "plainness or ambiguity of statutory language" we refer to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843 (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477, 112 S.Ct. 2589, 120 L.Ed.2d 379

conduct a reevaluation"); 34 C.F.R. §§ 300.503(a)(ii), 300.507(a).) Plaintiff argues that a school must respond by written notice to a request for reevaluation. (Pl.'s Compl. at 5, ¶ 16.)

Defendants' failure to provide written notice of the school's response may be violative of the implementing regulations which require that written notification be sent to parents if the school changes or refuses to change "the identification, evaluation, or educational placement of the child or the provision of FAPE to the child." 34 C.F.R. § 300.503(a)(ii); *see also* 20 U.S.C. § 1415(b)(3)(B) (requiring written prior notice to parents if an agency "refuses to initiate or change the ... evaluation" of a child). To the extent that plaintiff appears to challenge the failure to notify, however, the court cannot take up an issue that was not presented before the hearing officer. *See Shaw v. Dist. of Columbia*, 238 F.Supp.2d 127, 140 (D.D.C. 2002) (citing *Cox v. Jenkins*, 878 F.2d 414, 420 (D.C.Cir.1989)). Absent "allegation[s] that an attempt was made to raise this issue before the hearing officer [who] declined to consider it" and "absent a showing that ex-

haustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the IDEA before seeking judicial review under the Act." *Id.* (citations omitted).

Here, plaintiff never contended at the due process hearing that the absence of *notice* violated her procedural rights. The issue raised at the hearing was whether the school's *reevaluation efforts* were timely. Accordingly, a court should not determine whether the school's lack of notice constituted a denial of plaintiff's right to a free appropriate public education without the hearing officer having had the first opportunity to examine the issue. From the hearing officer's report, it appears that a number of matters were raised that could not be heard because plaintiff had failed to follow hearing procedures. (Pl.'s Compl. Ex. JH–4 at 1.) What the hearing officer did not determine, this court should not examine unless such exhaustion would be futile. Plaintiff has not offered any indication, nor does the record support, reasons that the court should hear the matters now.

(1992)); *McCarthy v. Bronson,* 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991).

*United States v. Wilson,* 290 F.3d 347, 352–53 (D.C.Cir.2002). Deference to an agency "must have its limits where ... application of the [agency's statutory interpretation] would be inconsistent with an obvious congressional intent" or where there are "compelling indications that it is wrong." *Planned Parenthood Fed'n of Am., Inc. v. Heckler,* 712 F.2d 650, 655 (D.C.Cir.1983) (internal quotations and citations omitted).

The process of reevaluations under the IDEA is set forth in 20 U.S.C. § 1414(a)(2) and 34 C.F.R. § 300.536(b), both of which provide that an educational agency "shall ensure that a reevaluation of each child is conducted ... if conditions warrant a reevaluation, or if the child's parent or teacher requests a reevaluation, but at least once every 3 years[.]" 20 U.S.C. § 1414(a)(2); 34 C.F.R. § 300.536(b). From the statute and regulation, it is clear that the obligation to conduct reevaluations "if conditions warrant" is distinct from the obligation arising from a parent or teacher request. *Policy Letter in Response to Inquiry of Deborah S. Tinsley,* 16 Education for the Handicapped Law Report 1076, 1078 (1990). In *Cartwright v. Dist. of Columbia,* 267 F.Supp.2d 83 (D.D.C.2003), a court addressed directly the interpretation of § 1414(a)(2) and found that a

> hearing officer's application of the "clearly warranted" standard to the reevaluation request of the parent directly conflicts with the wording of the regulation and is inconsistent with the regulation. The regulation unambiguously applies the "clearly warranted" standard to a general request for a reevaluation by a person or agency other than a teacher or a parent. A request made by either a

parent or a teacher, however, is set apart as a separate clause to which no articulated standard applies. Thus an evaluation of the reasonableness of the hearing officer's interpretation—the second prong of the *Chevron/Bowles* test— is not necessary as the language of the regulation [and statute] present[ ] no ambiguity.

*Cartwright,* 267 F.Supp.2d at 86–87. The court held that given the plain language of the regulation and the "absence of a condition precedent to be met by a parent requesting a reevaluation, [the school's] failure to comply with [that parent's] request clearly violates the language of the regulation. Upon receipt of ... [the] request, [the school] should have reevaluated [the student]." *Id.* at 87; *see also Edwards-White v. Dist. of Columbia,* 785 F.Supp. 1022, 1024 (D.D.C.1992) ("Because DCPS was on notice that plaintiffs wanted a reevaluation of [the child's] placement, DCPS was obligated under [the predecessor statute to the IDEA] to review and possibly revise her IEP. Consequently, the Hearing Officer's determination was erroneous since implicit in his holding was the notion that DCPS was under no such obligation.").

"The preeminent canon of statutory interpretation requires [courts] to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' " *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338 (2004). Given that the statute expressly requires triggering conditions for a reevaluation if not requested by a parent or agency, and likewise omits that same condition from the language controlling parental requests for reevaluations, the hearing officer is not entitled to engraft a comparable condition upon the latter type of reevaluation. The language of the statute and regulation simply do not

permit such an interpretation. *See also Heckler*, 712 F.2d at 663 (noting that an agency could not "graft comparable parental notification requirements [from one statute] onto the structure of the completely separate" statute). "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (internal quotations and citation omitted).

Because the language of the statute is clear, the hearing officer's interpretation of § 1414(a)(2) and 34 C.F.R. § 300.536(b) as requiring triggering conditions to warrant a reevaluation upon parental request is not one permitted by the statute. Defendants argue that policy rationales justify the hearing officer's interpretation, namely, that "[t]here would be a tremendous drain on the time and economic resources of defendants to provide reevaluations just for the asking without substantive reasons having been articulated." (Def.'s Mot. at 4.) But, it is not for the court to create conditions where the statute unambiguously expresses none. *See also United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 496 (D.C.Cir.2004) ("[I]t is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result."). Defendants' arguments not grounded in the text of the statute must give way to the plain meaning of § 1414(a)(2) and 34 C.F.R. § 300.536(b). Accordingly, plaintiff will be granted summary judgment on this ground and the defendants will be directed to complete a reevaluation of Jervon Herbin if plaintiff still seeks one.

## III. ATTORNEY'S FEES AND COSTS

A party is entitled to attorney's fees and costs under the IDEA only if he or she is a "prevailing party." 20 U.S.C. § 1415(i)(3)(B). A prevailing party is one who gains a "material alteration of the relationship of the parties" and gains judgment on the merits. *Bridgeforth v. Dist. of Columbia*, 933 F.Supp. 7, 10 (D.D.C. 1996). Having successfully sought a ruling directing defendants to reevaluate Jervon, an effort defendants opposed, plaintiff is a prevailing party on that claim and is entitled to recover attorney's fees and costs.

### CONCLUSION

The hearing officer did not err in determining that the four-month delay in the school's response time was not unreasonable but did incorrectly interpret section 1414 of the IDEA and the implementing regulation. Plaintiff is entitled to a reevaluation of Jervon Herbin. Accordingly, defendants' and plaintiff's motions for summary judgment will be granted in part and denied in part. Defendants will be granted summary judgment on plaintiff's claim that the hearing officer erroneously determined that the four-month delay in responding to her request for a reevaluation was reasonable. Plaintiff will be granted summary judgment on the ground that the hearing officer misinterpreted the reevaluation provision of the IDEA, and plaintiff may thus recover appropriate attorney's fees and costs. A final Order accompanies this Memorandum Opinion.